Anderson, J.,
delivered the opinion of the court.
This suit was brought by the infant heirs of Stephen Sanders, deceased, to recover their paternal inheritance, which had been sold by the executor of their deceased father, and purchased by the appellant, who was one of their guardians. The executor having received the whole fund arising from the sale of the complainant’s land, and appropriated it to his own use, had become hopelessly *66 insolvent; and their guai’dian was in possession of their land, which he claimed to be his own by purchase.
The bill sets out the will of Stephen Sanders, and charges among other things, that said sale was without auj-pori^y 0f }aw_ The decree of the Circuit court sets it aside as null and void, gives the land to complainants, and holds the appellant to account for rents and profits ; from which decree he appeals to this court. The importance of the case, the highly respectable character of the parties, and the magnitude of the interests involved, demand for it our most earnest and careful consideration.
Many questions have been raised, and issues made in argument, by the learned counsel, which, upon the view .we have taken of the case, we do not deem it necessary to decide. ' Whilst the conduct of the executor, in undertakir g to execute a trust, to make sale of the real estate, which he claimed to have been confided to him by the will of Stephen Sanders, without having given the bond and security, and taken the oath required by law; and then appropriating the fund arising from the sale-of the ■land to his own use; notwithstanding the confidence he had in his own financial ability to refund it, cannot be regarded otherwise than as extremely, reprehensible; and whilst the purchase of his wards’ la,nd by the appellant, and the payment of the purchase money partly in paper, a considerable portion of which was not bearing interest, and especially the payment made in the executor’s own debt, in satisfaction of his obligation to the executor for a debt which was bearing interest, aud which was really due to his wards ; and in fact the making of payment at all to the executor, who had riot given security and qualified as the law required, of a debt really due from him to his infant wards; considering the relation which he sustained to the beneficiaries of the fund, as their guardian, we must say, evidences great indiscretion, if not unwarrantable insensibility to. the obligations of his trust; nevertheless, we are of *67 opinion that there is no evidence of collusion between the said executor and Robert Raper, in the sale and purchase of the land; and no evidence of mala files, on the part of either; and that the whole question is one of power. Was the said sale and conveyance by the executor, withi.1 the scope of the power and authority with which he was clothed by the will of Stephen Sanders ?
It is contended by appellant’s counsel, that the power results from the charge upon the whole estate for the payment of debts. But we do not think it can be put upon that ground. The sale, it is evident, was not made for that purpose. The bill charges that it was made without authority of law; and the answer of Robert Raper does not pretend that it was sold for payment of debts. On the contrary, he says, he “had no suspicion of any thing unfair or illegal, in the action of the executor, whom he supposed to be selling under a clearly defined discretion, vested in him by the testator.” And again, “the whole question of sale and disposition and management of the proceeds, was confided by the testator to the judgment and discretion of the executor exclusively; and (he) had a right to presume that he was exercising his power fairly and faithfully.” The bill as against the executor, is taken for confessed. But his deposition is taken by his co-defendant, Robert Raper, and in that he says, “ he sold it under the power he thought he had in the will, And in answer to the question, “ what motives governed you in selling the land, under the discretionary power vested in you under the will ?” he says, “ I thought it was the best thing I could do for the children.” It was not pretended by either of them, that the land was sold for the payment of debts. Ror does it appear from the record that there was any necessity to sell the land for payment of debts.
Robert Raper, as guardian, had resisted by a suit *68 which was then pending, the sale of negroes for the pay-.menl;- °f debts, upon the ground that it was not neces- ■ sary, and in fact that there was no indebtedness; and obtained an injunction to restrain the executor from sei2iug the slaves. After the sale of the land,, he, with Lockey Sanders, the widow, and his co-guardian, filed a supplemental bill in that suit, iu which they allege that “John A. Sanders, in the exercise of a power and discretion claimed by him under the will of his said testator, has proceeded to sell the real estate of the said Stephen Sanders.” John A. Sanders, in his answer, admits .the sale-of the.land, “which, he alleges, he had a right to do, in the exei’cise of the unlimited discretion vested in him by the power conferred in the will of his said testator,which .said power does not stop with the mere disposal of the land itself, but is expressly extended to the loaning of the'money, the proceeds of the sale.” I think,, then, there can be no question that, the land was not sold for the payment of debts. If the executor had proposed-to sell the land for that purpose, Kobert Kaper, instead of acquiescing and sanctioning it by becoming the purchaser, would doubtless have-resisted the sale. Indeed,if after resisting the sale of personal property for- the. payment of debts, upon the ground that there was no necessity and no indebtedness, he afterwards, while that suit was pending, and undetermined, acquiesced in the sale of the land for such a purpose, and became himself the-purchaser, it would have been very strong evidence of fraud and collusion. And it seems to me under the circumstances referred to, that for 'the executor to hold out to the world, and especially to the guardians of the infant heirs, that he was selling the land, in the exercise of discretion and authority vested in him by- the will to make-an advantageous investment for the children, when he was in fact selling for the payment of debts, the existence of which was being contested by the guardians in a suit, *69 then depending, such sale would have been a fraud upon the guardians and their wards.
The whole case is then resolvable into this inquiry : Does the will confer upon the executor the power to make the sale and conveyance of the land which is involved in this suit? The only power given to the executor to sell, is given by the third clause of the will. The second clause requires that, as long as the wife of the testator shall remain his widow, all his property, both personal and real, shall be kept together, subject to the control of the executor, but the possession to be in his wife during her widowhood. But the third section provides, “ if my wifeLockey Sanders shouldmarry, then it is my will that she take one-third of my estate, and the remainder to be put in immediate possession of my hereinafter-named executor ; and if, in his opinion, it should at any time thereafter be more advantageous to the interest of my child or children, to sell the entire estate, both real and personal, and loan the money at-interest for the benefit of my child or children, he is hereby authorized to sell the same, whenever in his discretion it may become necessary to do so.” Language could not be more explicit. There is no ambiguity here requiring judicial construction. It was argued for the appellant that the word “rthereafter,” according to grammatical construction, refers to the taking.possession by the executor as its immediate antecedent. To give it that construction, it seems to me, does not alter the effect. Because the will does not authorize him to take possession until after the widow marries. So that, upon that construction, the power to sell is not given, except in the event of the widow’s marriage. But the whole sentence should be taken together to perceive what was in the mind of the testator. The first idea was that his wife, who was young- and attractive, might marry again. I do not understand the will as designed to be restrictive of her second marriage. In that event *70 the testator provides liberally for her. lie gives her the one-third of his whole estate; a much more liberal provision than the law makes for her, if she should renounce the will. He seems to have had unbounded confidence in his wife, and strong affection for her. I regard his will as investing her with his whole estate, real and personal, for and during the term of her life, upon condition that she remains his widow. His confidence in her is so great, that, in that event, he makes no provision for his children, which were undoubtedly the objects of his tender solicitude and affection. As long as his wife remained a widow, they were entitled to no-distribution of his estate. He seems to have relied upon his wife to provide for them as long as she remained a widow. But, in the event of her marriage, there would he such a change in her circumstances and condition in life, as to make a change in the disposition of his' property, with reference to his children, necessary. New relations would be formed, and other interests would arise. The second husband would ; have the use and management of his wife’s property, and his interests might conflict with those of the testator’s children. It was necessary, therefore, that he should make other provision for his children in that event. And- this is the second thought which would naturally arise in his mind, what provision shall I make for my children, to have effect if that event should take place. Their interests would be separate and distinct from their mother’s, and a sepa.rate and independent provision should be made for them. He therefore provides for a division of his estate. Instead of his wife having his whole estate, during her life, if she remains his widow, he gives her one-third of his estate, and he gives to his childrenthe residue. He not only gives to his children an estate, but provides for it a custodian. He could not commit it to the custody of his wife; that would be to commit it to her husband’s control. He commits it to the custody of his father, *71 whom he constitutes his executor, requiring him to take immediate possession of it, and investing him with power thereafter to sell it, if in his discretion, he should think it would be advantageous to the interests of his children to do so, and to loan the money at interest. The whole provision, giving to his wife one-third of his estate, which she is authorized to retain in possession; the immediate transfer of the residue to the possession of his executor, for the benefit of his children; and the sale thereof, at the discretion of his executor, are all' dependent upon the happening of one event; to wit: the marriage of his wife. Until that event occurred, no change was to be made in the disposition which he had, in the previous clause of his will, made of his estate ; and until that event, the marriage of his wife, occurred, the whole estate was hers, and no power was vested in the executor to sell.
But it was argued that the renunciation by the wife o,f the provision made for her in the will, was equivalent to' the marriage of the wife; and operated so as to invest the executor with power to sell: That it produced precisely the same state of things, at least as to the necessity for a division of the estate, that would have been produced' by the event, upon the happening of which the executor was authorized to sell. I could not admit the soundness, of this position, even if the facts of which it is predicated; could be conceded. Where the testator gives an authority or power, upon the happening of an event1 which he specifies, that authority or power does not attach from the happening of a different event, although^ •the effect may be the same upon the condition of his. estate, or the status and interests of those who are to be affected by the exercise of the power. But the renunciation by the widow, of the provision made for her by the will of her husband, which seems to be greatly to the' prejudice of her own interests, and ill-advised, did not produce that change1 of relation, and condition, which *72 would have been caused by her second marriage ; and which was doubtless in the mind of the testator when he indited that third clause in his will: It' is true, by the renunciation she surrendered the whole estate for life, if she remained a widow, and the one-third in fee, if. she. married, for one-third of the estate for life ; but that was no reason why she might not have retained possession of her children’s part of the estate, whieh she surrendered to them by her act of renunciation ;• and as their guardian, she was entitled to the possession and management, of it. By this act of hers there was no necessity for any interferance by the executor, with her possession ; and it conferred upon him no powers, and devolved no duties which did not exist prior to her renunciation.
, There is no reason to believe that her renunciation of the will, if it had been anticipated by the testator, Would have induced him to have taken from her the possession and enjoyment of the whole estate ; at least during the minority of the children,'if she remained his widow; oiy that he would have required his executor to take immediate possession of the children’s part, with power to sell it at his discretion. There were reasons for investing the executor with this power, in case of her marriage, which would not apply to the mere act of renunciation.The only effect of renunciation was to give the children k present interest in two-thirds' of the estate, instead of retaining the whole herself during life, in case she did not marry. And as long as she remained a widow, there . was no reason .Why the desire and will of her husband, that she should have the custody and management of her children’s interests in his estate, should not operate-after herTenunciation as well as before. But whatever disposition .the testator might have made, in the event of her ■ ^enunciation,' if he had anticipated it, he made none, as contingent .upon such an event, and it is notin the power ,'óf the courts to make it for him.
.■r-Upon the whole, we are of opinion that the language *73 ■of the will is clear and unambiguous ; and that it only-gives to the executor power to sell the land of the infant children of the testator, in the event.of the widow’s marriage ; and that there is nothing in the circumstances surrounding the testator at the time he made his will, or in the after act of renunciation by the widow, which can change the plain import of the .terms of the will. And the wife of the testator, not having married, the executor had no power to sell and convey the land which -descended to the infant children of the testator, to the ap-; pellant, Robert Raper, as set forth in this record. In the language of Judge Carr, in Jackson v. Ligón, 3 Leigh, 1.61, 193, a case involving the same question, as to the, power of the executor, under a similar provision in the will, and when there was a renunciation by the widow, we may say in this case, “ Call it a naked power or a power blended with a trust; construe it strictly or liberally, still you cannot make it a power to sell the land while the wife was unmarried.”
It is objected to the decree, that it is inconsistent with the prayer of the bill and with the case stated. We do; not think it is inconsistent with the case made by the bill; and, though it is not in accordance with the special relief asked, it is proper under the prayer for general relief.
The objection, that the decree directs the land to be put into the hands of infant heirs, if it were an error, may be corrected, as the decree is only interlocutory. But both of the appellees, being now of age, as shown by the record, it is not necessary to amend the decree in -that respect.
It is also objected, that the decree is erroneous, because it interferes with the previous assignment of ■dower to the widow, which the appellant has purchased. It appears from the record, that on the motion of Lockey Sanders, an order was made by the court for Wythe county, 15th of October 1850, appointing corn- *74 missioners to lay off and assign her dower in the lands of her deceased husband, Stephen Sanders. That proceeding was ex parte. The heirs were not parties to it; and if the commissioners had reported an assignment of dower, and that had been confirmed by the judgment of the court, which does not appear, it could not have been binding upon them. The wife’s dower, and the interests of the heirs, were conveyed to the appellant by the same deed. The decree invalidates and annuls the deed as to-the heirs, and confirms it as to the widow. It was necessary, then, to a final decree, aud to an adjustment of the rights of all the parties, to ascertain what part of the land the defendant Robert Raper was entitled tO' under his purchase from the widow, and what part each of the complainants was entitled to, as the heirs at law of Stephen Sanders, deceased, and to allot to each one his share, and thus to make an end of the controversy. And to this end it was necessary and proper to appoint commissioners for that purpose. We are of opinion, therefore, that there is no error in said decree, and that the same ought to be affirmnd.
Decree appirmed.