20 F.3d 1550
 9 Indiv.Empl.Rts.Cas. (BNA) 1266
 Millard McKINNEY, Plaintiff-Appellant,
v.
John PATE, individually and in his official capacity as
Commissioner of the Osceola County Board of Commissioners,
Jack Shannin, individually and in his official capacity as
Development Department Director of Osceola County, and the
Osceola County Board of Commissioners, collectively,
Defendants-Appellees.
 No. 91-3416.
 United States Court of Appeals,
Eleventh Circuit.
 May 5, 1994.
 
 Thomas J. Pilacek, Longwood, FL, for appellant.
 Robert H. Chanin, John M. West, Bredhoff & Kaiser, Washington, DC, for amicus curiae-National Educ. Ass'n.
 Lewis E. Shelley, Tallahassee, FL, for appellees.
 William C. Joy, Carol Atha Cosgrove, Office of the Atty. Gen., Atlanta, GA, for amicus for States of Ga., Fla. and Ala.
 R. Read Gignilliat, Walter O. Lambeth, Jr., J. Lewis Sapp, Stanford G. Wilson and William Drummond Deveney, Elarbee, Thompson & Trapnell, Atlanta, GA, for amicus Ga. Municipal Ass'n.
 
 
 1
 Kevin W. Shaughnessy, Akerman, Senterfitt & Eidson, P.A., Orlando, FL, for amicus Orange Co., Fla.
 
 
 2
 Susan M. Hartwig, Steve Rothman, Office of the County Atty., Atlanta, GA, for amicus Fulton County, GA.
 
 
 3
 Anthony C. Musto, Asst. County Atty., Ft. Lauderdale, FL, for amicus Fla. Ass'n of County Attys.
 
 
 4
 Jody M. Litchford, Orlando, FL, for amicus Fla. League of Cities.
 
 
 5
 Appeal from the United States District Court for the Middle District of Florida.
 
 
 6
 Before TJOFLAT, Chief Judge, KRAVITCH, HATCHETT, ANDERSON, EDMONDSON, COX, BIRCH, DUBINA, BLACK and CARNES, Circuit Judges.*
 
 TJOFLAT, Chief Judge:
 
 7
 This case presents the following issue: whether, under the Fourteenth Amendment, a government employee possessing a state-created property interest in his employment states a substantive due process claim, rather than a procedural due process claim, when he alleges that he was deprived of that employment interest by an arbitrary and capricious non-legislative government action. For ten years, as a panel of this court noted in this case,[1] the law of this circuit has been that an employee alleging such a termination states a substantive due process claim. This circuit's law, however, diverges from Supreme Court precedent and affords protection not provided by the substantive component of the Fourteenth Amendment's Due Process Clause. Today, we return this circuit's due process jurisprudence to a proper footing and hold that the government action contested here does not give rise to a substantive due process claim.
 
 
 8
 In part I, we set forth the facts and procedural history of this case. In part II, we first discuss the Supreme Court's due process jurisprudence and then demonstrate how this circuit's cases have diverged from that established law. After demonstrating in part III that the claim in this case implicates only procedural due process guarantees, we find in part IV that the procedures here afforded satisfied constitutionally mandated minima. Finally, we find that this holding applies retroactively and requires the dismissal of appellant's claim.[2]
 
 I.
 
 9
 Appellant Millard McKinney, the plaintiff below, obtained a position as the County Building Official in Osceola County, Florida, on July 27, 1987.[3] The Building Division is one of three divisions within the Osceola County Development Department. Jack Shannin, the Director of the Development Department, hired McKinney and was McKinney's immediate supervisor; Shannin reported to County Administrator Eleanor Anderson.
 
 
 10
 Prior to McKinney's hiring, both the Building Division and the Development Department had been the subject of numerous public complaints; in part, McKinney was hired to address the public's dissatisfaction with the Building Division. To address ongoing problems in the Development Department and the Building Division, at least two public "workshops" were held during McKinney's tenure. Both prior to and subsequent to these hearings, McKinney's performance evaluations were excellent.
 
 
 11
 In November 1988, John Pate was elected to serve as one of the five commissioners on the Osceola County Board of County Commissioners ("the Board"). Because the public often directed complaints regarding the administration of the county's governmental business to the Board, not to individual departments, each commissioner also served as a liaison between the Board and a department; Pate's liaison duties included Shannin's Development Department (and, indirectly, McKinney's Building Division). McKinney alleges that members of the Board--particularly Pate, who in addition to his position as a county commissioner was employed by a construction subcontractor--were biased against McKinney because of McKinney's strict enforcement of the county's building codes. The Board allegedly informed County Administrator Anderson that McKinney was to be fired; Anderson in turn instructed Shannin to fire McKinney, asserting political motivations of the commissioners as justification. Shannin twice informed McKinney that he should resign or he would be fired; McKinney refused to resign.
 
 
 12
 McKinney was a full-time permanent employee of Osceola County. The Osceola County Policy Manual provides that "[a] permanent employee may be dismissed only for cause as outlined in the Code of Conduct and Disciplinary Procedures and this policy." In this case, "cause" would be defined as "incompeten[ce] or inefficienc[y] in carrying out [his] duties." The policy manual also outlines the procedures by which an employee may be terminated and divides employees into two categories: normal employees and "department heads." The termination procedures for department heads involve more procedural protection for the employee. As it was unclear whether McKinney, as County Building Official, qualified as a "department head," the county elected to afford him the maximum amount of process possible and followed the procedures for the termination of a department head.
 
 
 13
 After McKinney refused to resign, Shannin began the termination process by drafting a "Notice of Reasons for Proposed Termination of Millard McKinney" setting forth thirteen charges against McKinney, each of which presumably justified McKinney's dismissal.[4] Immediately thereafter, the Board of County Commissioners held three days of hearings regarding the charges against McKinney. McKinney, who was aware of the bias he now alleges against Pate, attended the hearings with counsel (as well as with a court reporter). The county's labor attorney presented the case against McKinney, and McKinney cross-examined the county's witnesses and presented a case on his own behalf. (With the exception of his charge of bias, McKinney has not claimed that any of the procedures relevant to his termination were in any way deficient.) At the conclusion of the hearings, the Board upheld each of the charges and terminated McKinney's employment.
 
 
 14
 On October 11, 1989, McKinney brought this suit in the United States District Court for the Middle District of Florida. His complaint contained two counts; only the first count is before us.[5] That count, brought pursuant to 42 U.S.C. Sec. 1983 (1988), alleged that the various charges against McKinney were pretextual and that the Board therefore fired McKinney without reason. McKinney alleged that this pretextual termination violated his "constitutional employment rights" and consequently denied him substantive due process of law. McKinney sought money damages for past and future lost wages and benefits; for injury to his liberty interest in his good name and reputation; and for severe emotional distress.[6]
 
 
 15
 The Board's answer to the first count of McKinney's complaint, the substantive due process claim, denied McKinney's allegations and interposed as an affirmative defense the failure of the count to state a claim for relief. Following discovery, the Board moved for summary judgment based on that affirmative defense. The district court denied the motion and the case proceeded to trial on McKinney's substantive due process claim. The jury returned a verdict for McKinney in the amount of $145,000. Thereafter, the Board moved for judgment notwithstanding the verdict and, on April 8, 1991, the district court granted the Board's motion, set aside the verdict, and entered judgment for the Board. It is from this judgment that McKinney appeals.
 
 
 16
 After oral argument, a panel of this court vacated the district court's judgment and reinstated the jury's verdict. McKinney v. Pate, 985 F.2d 1502 (11th Cir.1993). Two judges specially concurred; they noted that, but for this circuit's precedent (which may be overruled only by the court sitting en banc, see Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc)), they would have affirmed the district court. McKinney, 985 F.2d at 1507 (Tjoflat, C.J., and Cox, J., specially concurring). The full court ordered the case reheard en banc and consequently vacated the panel's opinion. McKinney v. Pate, 994 F.2d 772, 773 (11th Cir.1993).
 
 II.
 A.
 
 17
 The Due Process Clause of the Fourteenth Amendment provides "nor shall any State deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, Sec. 1. The Supreme Court's interpretation of this clause explicates that the amendment provides two different kinds of constitutional protection: procedural due process and substantive due process. Cf. Zinermon v. Burch, 494 U.S. 113, 125, 110 S.Ct. 975, 983, 108 L.Ed.2d 100 (1990). A violation of either of these kinds of protection may form the basis for a suit under section 1983. Id.1.
 
 
 18
 The substantive component of the Due Process Clause protects those rights that are "fundamental," that is, rights that are "implicit in the concept of ordered liberty," Palko v. Connecticut, 302 U.S. 319, 325, 58 S.Ct. 149, 152, 82 L.Ed. 288 (1937).[7] The Supreme Court has deemed that most--but not all--of the rights enumerated in the Bill of Rights are fundamental; certain unenumerated rights (for instance, the penumbral right of privacy, see Planned Parenthood v. Casey, --- U.S. ----, ----, 112 S.Ct. 2791, 2807, 120 L.Ed.2d 674 (1992)) also merit protection. It is in this framework that fundamental rights are incorporated against the states.[8] A finding that a right merits substantive due process protection means that the right is protected "against 'certain government actions regardless of the fairness of the procedures used to implement them.' " Collins v. City of Harker Heights, --- U.S. ----, ----, 112 S.Ct. 1061, 1068, 117 L.Ed.2d 261 (1992) (quoting Daniels v. Williams, 474 U.S. 327, 331, 106 S.Ct. 662, 665, 88 L.Ed.2d 662 (1986)).
 
 
 19
 Although the Supreme Court has extended substantive due process protection to certain unenumerated rights, it has not extended Fourteenth Amendment coverage to a host of other areas. In fact,
 
 
 20
 the Court has always been reluctant to expand the concept of substantive due process because guideposts for responsible decisionmaking in this uncharted area are scarce and open-ended. The doctrine of judicial self-restraint requires us to exercise the utmost care whenever we are asked to break new ground in this field.
 
 
 21
 Collins, --- U.S. at ----, 112 S.Ct. at 1068 (citation omitted). Hence, remaining largely outside the scope of substantive due process jurisprudence are tort law, see Daniels, 474 U.S. at 332, 106 S.Ct. at 665, and public employment law, see, e.g., Bishop v. Wood, 426 U.S. 341, 350, 96 S.Ct. 2074, 2080, 48 L.Ed.2d 684 (1976), and Board of Regents v. Roth, 408 U.S. 564, 577-78, 92 S.Ct. 2701, 2709-10, 33 L.Ed.2d 548 (1972).
 
 
 22
 In short, areas in which substantive rights are created only by state law (as is the case with tort law and employment law) are not subject to substantive due process protection under the Due Process Clause because "substantive due process rights are created only by the Constitution." Regents of Univ. of Mich. v. Ewing, 474 U.S. 214, 229, 106 S.Ct. 507, 515, 88 L.Ed.2d 523 (1985) (Powell, J., concurring). As a result, these state law based rights constitutionally may be rescinded so long as the elements of procedural--not substantive--due process are observed.
 
 2.
 
 23
 Substantive due process rights differ from their procedural counterparts in a second, important fashion: the manner in which a violation of the right occurs. A violation of a substantive due process right, for instance, is complete when it occurs; hence, the availability vel non of an adequate post-deprivation state remedy is irrelevant. Because the right is "fundamental," no amount of process can justify its infringement.[9] By contrast, a procedural due process violation is not complete "unless and until the State fails to provide due process." Zinermon, 494 U.S. at 123, 110 S.Ct. at 983. In other words, the state may cure a procedural deprivation by providing a later procedural remedy; only when the state refuses to provide a process sufficient to remedy the procedural deprivation does a constitutional violation actionable under section 1983 arise.
 
 3.
 
 24
 A final distinctive characteristic of substantive due process rights is the typical remedy awarded to one whose rights have been violated. In substantive due process cases, the claimant seeks compensatory damages for the value of the deprived right.[10] In procedural due process cases, however, although the claimant may seek compensatory damages, the primary relief sought is equitable: for instance, in an employment case, the claimant typically seeks reinstatement and a properly conducted pre-termination hearing.[11] These process-based remedies are unique to procedural due process rights and, because of the definition of a substantive due process right as one which may not be violated regardless of the process, may not be awarded to one claiming a substantive due process violation. Because the relief awarded to a person claiming a substantive due process violation primarily is monetary, not equitable, a substantive due process deprivation likely is of substantially greater monetary value than a procedural due process deprivation.[12]
 
 B.
 
 25
 The Eleventh Circuit has considered a number of "substantive" due process employment termination cases in the last ten years.[13] The first clear indication that we would recognize a substantive due process violation for the pretextual termination of a state employee came in Hearn v. City of Gainesville, 688 F.2d 1328 (11th Cir.1982). The Hearn panel found that the Due Process Clause was implicated when the head of the city's personnel department arranged the elimination of the plaintiff's position in order to terminate him without cause:
 
 
 26
 [T]he layoff was a phony arrangement, carried out for an improper motive, to deprive Hearn of his job. This states a substantive due process violation--deprivation of a property interest for an improper motive and by means that were pretextual, arbitrary and capricious, and, because unrelated to the proper reasons for layoff, without any rational basis.
 
 
 27
 Id. at 1332 (citing Nebbia v. New York, 291 U.S. 502, 525, 54 S.Ct. 505, 510, 78 L.Ed. 940 (1933) ("[T]he guaranty of due process ... demands ... that the law shall not be unreasonable, arbitrary or capricious.")).[14]
 
 
 28
 A second panel visited the issue some six months later in Barnett v. Housing Auth. of Atlanta, 707 F.2d 1571 (11th Cir.1983). The plaintiff asserted that his termination was an attempt "to make him a sort of scapegoat" in response to an incident that embarrassed the Board of Commissioners of the Atlanta Housing Authority. The court affirmed the judgment entered on the jury verdict in the plaintiff's favor, finding the pretextual nature of the firing to be a violation of the plaintiff's substantive due process rights. Id. at 1577-78.
 
 
 29
 The rule was applied most recently in Adams v. Sewell, 946 F.2d 757 (11th Cir.1991). In that case, the panel found a substantive due process violation where a county alleged "improper management techniques" as the basis for discharge rather than admit that the employee was being fired because of allegations that he had sexually harassed another employee. Id. at 767.
 
 
 30
 The Eleventh Circuit law of "substantive" due process in the government employment setting is clear. "A violation of a public employee's right to substantive due process occurs when an employer deprives the employee of a property interest for an improper motive and by means that [are] pretextual, arbitrary and capricious, regardless of whether or not a hearing was held." Nolin v. Douglas County, 903 F.2d 1546, 1553-54 (11th Cir.1990) (internal quotation marks omitted); see also Barnett, 707 F.2d at 1577; Hearn, 688 F.2d at 1332; Adams, 946 F.2d at 766; Kelly v. Smith, 764 F.2d 1412, 1413 (11th Cir.1985). The plaintiff must show (1) a deprivation of a state law property right in continued employment (2) made through pretextual means to disguise an improper motive.
 
 C.
 
 31
 Satisfaction of these requirements will not make out a substantive due process claim under the jurisprudence of the Supreme Court, however, because only procedural issues are implicated. Whether an individual complains that a state lacks constitutionally adequate procedures for termination of employees or asserts that his particular hearing was not fair and impartial, he has raised only procedural due process concerns.
 
 
 32
 The clearest demonstration of the error of this court's precedent results from an examination of Bishop v. Wood, 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976). In that case, a police officer who had been terminated without a hearing claimed that he had been deprived of both a property interest (his employment status) and liberty interests (freedom from public stigma and freedom from pretextual termination). The Court first examined North Carolina law and concluded that the policeman had no property interest protected under the Fourteenth Amendment. Id. at 344-47, 96 S.Ct. at 2077-79. The Court also disposed of the policeman's first claimed liberty interest, freedom from public stigma, because the reasons for his termination were not made public. Id. at 348-49, 96 S.Ct. at 2079. Finally--and most importantly--the Court addressed the policeman's second claimed liberty interest, freedom from pretextual termination. The Court concluded that the allegedly pretextual termination did not raise a liberty interest:
 
 
 33
 The truth or falsity of the City Manager's statement determines whether or not his decision to discharge the petitioner was correct or prudent, but neither enhances nor diminishes petitioner's claim that his constitutionally protected interest in liberty has been impaired.
 
 
 34
 . . . . .
 
 
 35
 Indeed, the impact on petitioner's constitutionally protected interest in liberty is no greater even if we assume that the City Manager deliberately lied. Such fact might conceivably provide the basis for a state-law claim, the validity of which would be entirely unaffected by our analysis of the federal constitutional question.
 
 
 36
 Id. at 349 and n. 13, 96 S.Ct. at 2079-80 and n. 13. In other words, even if the ostensible reasons for the policeman's termination were entirely false and pretextual, no Fourteenth Amendment claim could be raised. The Supreme Court concluded with a firm statement that state employment decisions are not covered by its substantive due process jurisprudence:
 
 
 37
 The federal court is not the appropriate forum in which to review the multitude of personnel decisions that are made daily by public agencies. We must accept the harsh fact that numerous individual mistakes are inevitable in the day-to-day administration of our affairs. The United States Constitution cannot feasibly be construed to require federal judicial review for every such error. In the absence of any claim that the public employer was motivated by a desire to curtail or to penalize the exercise of an employee's constitutionally protected rights, we must presume that official action was regular and, if erroneous, can best be corrected in other ways. The Due Process Clause of the Fourteenth Amendment is not a guarantee against incorrect or ill-advised personnel decisions.
 
 
 38
 Id. at 349-50, 96 S.Ct. at 2080 (footnote omitted).
 
 
 39
 A decade after Bishop, the Supreme Court addressed the issue of whether the Fourteenth Amendment provided protection to employees who did possess a property right in their positions (unlike the policeman in Bishop who did not possess such a property right). In Cleveland Bd. Of Educ. v. Loudermill, 470 U.S. 532, 105 S.Ct. 1487 (1985), two employees, who could not be dismissed under Ohio law except for "misfeasance, malfeasance, or nonfeasance in office," were terminated. The Court concluded that each had a property right in continued employment and therefore was entitled to the protection of procedural due process. Id. at 539, 541, 105 S.Ct. at 1491, 1493.
 
 
 40
 When these cases are examined, it becomes evident that the law in this circuit diverges from Supreme Court precedent in three distinct and important ways. First, unlike our cases, Supreme Court precedent demonstrates that an employee with a property right in employment is protected only by the procedural component of the Due Process Clause, not its substantive component. Because employment rights are state-created rights and are not "fundamental" rights created by the Constitution, they do not enjoy substantive due process protection.
 
 
 41
 The second error in this circuit's law is that it allows a terminated employee to sue in federal court under section 1983 before the employee utilizes appropriate, available state remedial procedures. When a state procedure is inadequate, no procedural due process right has been violated unless and until the state fails to remedy that inadequacy. Zinermon, 494 U.S. at 123, 110 S.Ct. at 983. By converting pretextual terminations into substantive due process violations, however, our circuit's law forecloses the state's ability to remedy the procedural failings of its subdivisions and agencies in the appropriate fora--agencies, review boards, and state courts. In effect, our pretextual termination case law grants federal jurisdiction to cases that, for practical and legal purposes, are not yet "ripe."
 
 
 42
 Finally, this circuit's law provides an inappropriate remedy to pretextually terminated employees. As we state above, the appropriate remedy for a pretextual termination is not damages calculated on the employee's potential earnings for the rest of his or her working life, but rather procedural, equitable remedies: reinstatement and a directive that proper procedures be used in any future termination proceedings.
 
 
 43
 The Supreme Court's analysis clearly distinguishes between procedural and substantive due process rights, violations, and remedies. To date, however, our cases have confused these two categories and incorrectly placed the claims of pretextually terminated employees on the substantive due process side of the ledger. Today, however, we hold that, in non-legislative cases, only procedural due process claims are available to pretextually terminated employees. Thus, we conclude that our prior decisions, which granted pretextually terminated employees section 1983 causes of action premised on substantive due process violations, are contrary to Supreme Court jurisprudence; to the extent they are contrary to the holding of this opinion, they are overruled.[15]
 
 III.
 
 44
 When this appropriate standard is applied to McKinney's allegations, we find that those allegations support only a procedural due process claim. In reaching this conclusion, we first note that McKinney styled Count I of his complaint "Substantive Due Process." Our responsibility, however, is to examine McKinney's cause of action for what it actually is, not for what McKinney would have it be. We therefore afford McKinney's denomination of the issue no weight.
 
 
 45
 What do deserve weight are the facts upon which McKinney builds his claim. In his complaint, McKinney contends that, "by merely 'going through the motions' of an ostensibly unbiased post-termination hearing in the course of [its] attempt[ ] to discharge McKinney without proper cause," the County arbitrarily and capriciously deprived McKinney of his employment; in so doing, McKinney asserts, the County violated McKinney's due process rights. McKinney does not deny that the County followed a facially adequate procedure; in fact, but for his allegations of bias, McKinney acknowledges that there were no failures of process. McKinney's only contentions are that the facially adequate procedure was biased against him and that the Board was preordained to find against him, regardless of the evidence. On its face, then, McKinney's allegation is procedural: the County failed to provide one of the elements of procedural due process--an unbiased decisionmaker.
 
 
 46
 Our conclusion that McKinney's claim implicates procedural--and not substantive--due process protection garners support from an application of the Supreme Court's due process standards. First, as we discuss above, employment rights are not absolute. See Roth, 408 U.S. at 569-70, 92 S.Ct. at 2705; Perry v. Sindermann, 408 U.S. 593, 599, 92 S.Ct. 2694, 2698, 33 L.Ed.2d 570 (1972). Rather, an employee's right to employment may be abridged as long as the procedures used to abrogate that right satisfy constitutional minima. In addition, although we acknowledge that McKinney's allegations--if true--would be lamentable, we nonetheless cannot find that, under Palko, McKinney's right to employment is so fundamental that our democratic society and its inherent freedoms would be lost if that right were to be violated. See Harrah, 440 U.S. at 198, 99 S.Ct. at 1064. As such, we likewise cannot find that McKinney's state-created property right is deserving of substantive due process protection.
 
 
 47
 Moreover, the appropriate forum for addressing McKinney's claim is not federal court but a Florida state court possessing the ability to remedy the alleged procedural defect; that forum might well have prevented a violation of McKinney's procedural due process rights and thereby obviated the need for this suit. Finally, the appropriate remedy in this case is not lost wages and benefits calculated on the basis of McKinney's remaining working life; rather proper remedies include reinstatement and the correction of any procedural defects in the means by which McKinney was terminated.
 
 
 48
 As a result, we must analyze McKinney's claims in terms of procedural due process considerations. Accord Burney v. Polk Community College, 728 F.2d 1374 (11th Cir.1984); Duchesne v. Williams, 849 F.2d 1004 (6th Cir.1988) (en banc), cert. denied, 489 U.S. 1081, 109 S.Ct. 1535, 103 L.Ed.2d 840 (1989).
 
 IV.
 
 49
 Having determined that McKinney's claim raises procedural, not substantive, issues, our next task is to determine whether the procedure afforded McKinney satisfied constitutionally mandated due process minima.
 
 A.
 
 50
 It is axiomatic that, in general, the Constitution requires that the state provide fair procedures and an impartial decisionmaker before infringing on a person's interest in life, liberty, or property. More specifically, the Supreme Court has explained that a "tenured employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story" before a state or state agency may terminate an employee. Loudermill, 470 U.S. at 546, 105 S.Ct. at 1495. In other words, the employee is entitled to "some kind" of pre-termination hearing. Id. at 542, 105 S.Ct. at 1493. That hearing is not a mini-trial and "need not definitely resolve the propriety of the discharge. It should be an initial check against mistaken decisions--essentially, a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action." Id. at 545-46, 105 S.Ct. at 1495.
 
 
 51
 McKinney acknowledges that he received written notice of the charges against him; at the Board hearing, he also heard an explanation of the Board's evidence; finally, with the assistance of counsel, he had the opportunity to present his side of the story through witnesses, evidence, and argument. He thus received a pre-termination hearing and, with it, all the process due under Loudermill. Our task is to determine whether McKinney's allegation of bias demonstrates that he did not receive due process.
 
 B.
 1.
 
 52
 An allegation of bias may arise in either of two scenarios: in the first, the challenger learns of the decisionmaker's alleged bias prior to or during the proceeding; in the second, the challenger learns of the decisionmaker's alleged bias only after the proceeding has terminated. To address these mutually exclusive scenarios, courts provide distinct procedures that afford the challenger an opportunity to address the alleged bias as well as to remedy outcomes that are tainted by bias.
 
 
 53
 In the first scenario, that of the contemporaneously recognized bias, courts usually require that the challenger contemporaneously object to the bias. Thus, when faced with a supposedly biased venireperson in a criminal case,[16] for instance, the defendant must object to the biased individual during voir dire, either by a challenge for cause or by a peremptory strike; if the defendant fails to object to the biased individual at this preliminary stage, the objection is deemed waived. Similarly, a challenger must object to a biased judge in a motion to recuse before trial or as soon as the alleged bias is discovered; again, the penalty for failing timely to object is waiver of the objection.
 
 
 54
 In the second scenario, the alleged bias is discovered after the proceeding has concluded; a contemporaneous objection therefore is impossible. Due process requires that the challenger have an opportunity to object to the alleged bias, and courts consequently have instituted procedures to address allegations of bias and to set aside bias-tainted outcomes. Typically, courts require that the challenger meet a threshold test of demonstrating harm or prejudice resulting from the alleged bias before they will reopen a closed case. See Lockett v. Blackburn, 571 F.2d 309, 314 (5th Cir.) (holding, in habeas corpus case filed by state prisoner, that deliberate concealment of named eyewitness by prosecution constitutes prima facie deprivation of due process), cert. denied, 439 U.S. 873, 99 S.Ct. 207, 58 L.Ed.2d 186 (1978);[17] Remmer v. United States, 347 U.S. 227, 74 S.Ct. 450, 98 L.Ed. 654 (1954). Absent a demonstration of prejudice, the challenger's allegations are discounted.
 
 2.
 
 55
 In both situations, due process is satisfied when the challenger has an opportunity to present his allegations and to demonstrate the alleged bias. A demonstration that the decisionmaker was biased, however, is not tantamount to a demonstration that there has been a denial of procedural due process. As we mention above, unlike substantive due process violations, procedural due process violations do not become complete "unless and until the state refuses to provide due process." Zinermon, 494 U.S. at 123, 110 S.Ct. at 983. More specifically, in the case of an employment termination case, "due process [does not] require the state to provide an impartial decisionmaker at the pre-termination hearing. The state is obligated only to make available 'the means by which [the employee] can receive redress for the deprivations.' " Schaper v. City of Huntsville, 813 F.2d 709, 715-16 (5th Cir.1987) (quoting Parratt v. Taylor, 451 U.S. 527, 543, 101 S.Ct. 1908, 1917, 68 L.Ed.2d 420 (1981)) (footnote omitted).
 
 
 56
 In Parratt (and its progeny, Hudson v. Palmer, 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984)), the Supreme Court held that due process did not require pre-deprivation hearings where the holding of such a hearing would be impracticable, that is, where the deprivation is the result of either a negligent or an intentional deprivation of property. All that due process requires, the Court said, is a post-deprivation "means of redress for property deprivations satisfy[ing] the requirements of procedural due process." Parratt, 451 U.S. at 537, 101 S.Ct. at 1914; accord Hudson, 468 U.S. at 533, 104 S.Ct. at 3204.
 
 
 57
 The precedent established by Parratt is unambiguous: even if McKinney suffered a procedural deprivation at the hands of a biased Board at his termination hearing, he has not suffered a violation of his procedural due process rights unless and until the State of Florida refuses to make available a means to remedy the deprivation. As any bias on the part of the Board was not sanctioned by the state and was the product of the intentional acts of the commissioners, under Parratt, only the state's refusal to provide a means to correct any error resulting from the bias would engender a procedural due process violation. It is to an examination of this state remedy--and a determination of whether it satisfies due process--that we now turn.
 
 3.
 
 58
 In this case, McKinney failed to take advantage of any state remedies, opting instead to pursue his claim in federal court.[18] In his en banc brief, McKinney asserts that the state remedy--review by Florida courts--is insufficient, largely because the statute of limitations for certiorari petitions of termination cases is significantly shorter than that for torts. McKinney also states that the state court procedure is deficient because the Florida courts' power to review is limited to the record before the Board. We disagree with McKinney's conclusion that Florida's process is inadequate.
 
 
 59
 First, Florida courts indeed do have the power to review employment termination cases. Inherent in that power to review is the power to remedy deficiencies and to cure violations of due process. Therefore, the Florida courts have the authority to order the relief to which McKinney claims to be entitled--a new hearing conducted by a fair tribunal. See, e.g., Elder v. Highlands County Bd. of County Comm'rs, 497 So.2d 1334, 1335 (Fla. 2d Dist.Ct.App.1986); Seminole County Bd. of County Comm'rs v. Long, 422 So.2d 938, 942 (Fla. 5th Dist.Ct.App.1982), pet. denied, 431 So.2d 989 (Fla.1983).
 
 
 60
 Second, the scope of the Florida courts' review encompasses the claim McKinney brought in federal court--that he was denied due process because of a partial decisionmaker. The Florida circuit courts, on certiorari review, possess broad powers of review:
 
 
 61
 Where a party is entitled as a matter of right to seek review in the circuit court ..., the circuit court must determine whether procedural due process is accorded ... and whether the administrative findings and judgment are supported by competent substantial evidence.
 
 
 62
 City of Deerfield Beach v. Vaillant, 419 So.2d 624, 626 (Fla.1982) (emphasis added). In other words, the Florida circuit courts "[r]eview[ ] the entire cause [and] consider[ ] ... every aspect" of the case to determine whether due process was observed, Long, 422 So.2d at 941; McKinney, therefore, had an available, adequate remedy in the state system. The Florida courts' review, which "partakes more of the nature of an original judicial proceeding (which it is) than of a classic appeal of a lower judicial tribunal," id. at 942, more than satisfies Parratt 's post-termination process requirement.[19]
 
 
 63
 Finally, McKinney's state remedy is adequate. The Supreme Court held in Parratt that the state's remedial procedure need not provide all relief available under section 1983; as long as the remedy "could have fully compensated the [employee] for the property loss he suffered," Parratt, 451 U.S. at 544, 101 S.Ct. at 1917, the remedy satisfies procedural due process. The Florida courts possess the power to remedy McKinney's loss both in terms of damages and equitable relief; as such, the Florida procedures satisfy procedural due process and alleviate any deprivation McKinney may have suffered at the hands of the Board.
 
 
 64
 We therefore conclude that McKinney's state remedy was capable of providing McKinney with all the relief warranted. Even if McKinney's bias allegations are true, the presence of a satisfactory state remedy mandates that we find that no procedural due process violation occurred.[20]
 
 C.
 
 65
 Creating a substantive due process right in pretextual termination cases has two detrimental consequences. First, our past substantive due process jurisprudence provides terminated employees with more protection than criminal defendants whose liberty--and sometimes whose life--is at stake. As we mention above, criminal defendants must make contemporaneous objections to suspected bias on the part of the judge or a member of the jury; otherwise, the objection is considered waived. By allowing pretextually terminated employees to bring substantive due process cases, however, we encourage employees to sandbag the decisionmaker by pocketing their objections and then using them as part of a section 1983 case for damages. This policy also is wasteful of judicial resources (as objections which could be resolved easily before the original decisionmaker promulgate costly and unnecessary litigation and appeals in federal court); this is particularly true since the federal courts often will possess an incomplete record on which to resolve section 1983 cases specifically because the employee failed to raise objections before the decisionmaker and thereby create the necessary factual record. It is apparent that a policy which affords terminated employees greater procedural protection than that afforded criminal--even capital--defendants is misguided.
 
 
 66
 The second detrimental side effect of our past policy concerns the operation of local governments. By subjecting local officials to indiscriminate blindsiding by their employees (as well as to Monday morning quarterbacking by federal courts), we encourage them not to fire anyone for fear of the resulting federal suit. Our policy also deters individuals from serving in local government, since they know that their decisions--as well as their lives--may be subjected to indiscriminate post hoc searches for impermissible motives. In addition, subordinates can use our policy, which was intended merely to shield employees from their employers' improper actions, as a sword; threatened substantive due process suits for damages all too readily may force employers to retain unsuitable employees. In short, our policy has the effect of frustrating local government employers in their attempts to remove unsatisfactory employees.
 
 D.
 
 67
 In this case, McKinney's allegations state only a procedural--not a substantive--due process claim. Even if McKinney's allegations are taken to be true, the process due McKinney under Loudermill and Parratt was limited to an opportunity to present his case before the Board at a pre-termination hearing and the presence of adequate post-termination remedies. McKinney availed himself of the first opportunity. "The fact that [McKinney] failed to avail himself of the full procedures provided by state law [i.e., the post-termination remedies] does not constitute a sign of their inadequacy." Kremer v. Chemical Constr. Corp., 456 U.S. 461, 485, 102 S.Ct. 1883, 1899, 72 L.Ed.2d 262 (1982). Since the Florida courts possess the power to remedy any deficiency in the process by which McKinney was terminated, McKinney can not claim that he was deprived of procedural due process.[21]
 
 V.
 
 68
 We are left with one final task: delimiting the effect of today's holding. The County urges that we apply our decision retroactively, that is, to this case and to all other cases currently pending in the courts. McKinney urges that we announce our decision prospectively, that is, only to cases brought after this date; in the alternative, McKinney asks that we apply our holding in a selectively prospective fashion, thus excepting McKinney from its scope.[22]
 
 
 69
 The Supreme Court has established a three-factor test for determining whether to apply a newly announced non-criminal decision retroactively. Chevron Oil Co. v. Huson, 404 U.S. 97, 106-07, 92 S.Ct. 349, 355, 30 L.Ed.2d 296 (1971). To avoid retroactive application of the new holding, the court looks to three factors: First, the decision must announce a new principle of law, either by overruling clear past precedent or by deciding an issue of first impression the resolution of which was not clearly foreshadowed. Second, the application of the old rule in the instant case must not contravene the purpose and operation of the provision being interpreted. And, third, application of the new rule in the instant case must be inequitable. The Chevron Oil test has not been overruled, but its continued validity has been called into question.
 
 
 70
 The first reason for believing that Chevron Oil no longer governs retroactivity questions is that the Supreme Court, in Griffith v. Kentucky, 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987), overruled the criminal law counterpart to Chevron Oil, Linkletter v. Walker, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965). In Griffith, the Court held that a new rule for conduct of criminal prosecutions is to be applied retroactively to all cases, state or federal, pending on direct review or not yet final.
 
 
 71
 Twice since Griffith, the Court has addressed retroactivity in non-criminal cases. See Harper v. Virginia Dep't of Taxation, --- U.S. ----, ---- - ----, 113 S.Ct. 2510, 2516-18, 125 L.Ed.2d 74 (1993); Beam, 501 U.S. at ----, 111 S.Ct. at 2448 (opinion of Souter, J.). The County argues that these two cases implicitly overrule Chevron Oil. Neither Griffith nor Beam/ Harper, however, is applicable to the situation at hand. First, the Griffith Court's sole concern was criminal cases, a realm which is wholly distinct (as far as retroactivity is concerned) from civil cases. Second, the Beam and Harper Courts addressed the retroactive application of a new rule that had been announced and applied in an earlier case, not in the instant case (as here). Beam and Harper stand only for the proposition that, once a rule of federal law is applied to the parties in the case in which it was announced, it must be applied retroactively. See Harper, --- U.S. at ----, 113 S.Ct. at 2517; Beam, 501 U.S. at ----, 111 S.Ct. at 2446 (opinion of Souter, J.). Neither decision directly addresses whether a newly announced decision need be applied to the parties in the instant case. Thus, the Beam and Harper Courts did not overrule Chevron Oil 's three-factor test. In addition, both Justice Souter's opinion in Beam and Justice Thomas' opinion in Harper reveal that the "general rule" of retrospective effect is just that: a general presumption that is subject to rebuttal under a Chevron Oil analysis. As a result, the posture of this case is not comparable to Beam and Harper; we therefore look to Chevron Oil itself for our standard concerning retroactivity.
 
 
 72
 The first Chevron Oil factor clearly is satisfied: Our holding today is a new rule that overrules our precedent. In addition, if we accept McKinney's allegations as true, the third factor may also be satisfied: McKinney's opportunity to litigate his grievance will be diminished by our holding; applying the old rule thus avoids an alleged inequity to him.[23]
 
 
 73
 Regardless of the strength of these two factors, however, McKinney's argument fails on balance[24] because of the second Chevron Oil factor: the purpose of the interpreted law. Today, we interpret the substantive component of the Due Process Clause. Our holding, consistent with Supreme Court precedent, is that the Clause does not provide a remedy in cases like McKinney's; rather, the Clause is designed to prompt state and local government to afford citizens due process in, among other situations, employment termination cases. Perpetuating the fiction that the Clause provides a remedy impedes this goal by encouraging claimants to bring premature suits in federal court, thereby circumventing established state procedures specifically designed to provide them with constitutionally required due process and removing all incentive for states to provide remedial procedures. Even though McKinney satisfies the first Chevron Oil factor and may satisfy the third, therefore, the fact that the Due Process Clause does not provide him with a source of relief mandates that we not create a fiction that it does. Our holding must be applied retroactively.
 
 VI.
 
 74
 In this case, McKinney sought extraordinary relief: McKinney wanted the federal courts to engage in an after-the-fact examination of the motives of the individuals who terminated him. Ironically, even in death penalty cases, where the anticipated deprivation of life is of significantly greater magnitude than the deprivation claimed by McKinney, we do not allow the convicted criminal to raise after-the-fact objections to the motives of the judge and jury that convicted him. In this case, McKinney could have availed himself of state court procedures that not only could have provided him with adequate relief, but also would have satisfied his interest in due process. McKinney chose not to utilize those procedures, however; we therefore hold that there was no due process violation and, as a result, no section 1983 claim. The district court's order of judgment notwithstanding the verdict is AFFIRMED.
 
 
 75
 IT IS SO ORDERED.
 
 HATCHETT, Circuit Judge, specially concurring:
 
 76
 I join in the judgment holding that McKinney did not present a substantive due process claim according to Supreme Court precedent. I write specially to emphasize the fact that we are not holding that one who suffers a due process violation must first seek relief in state courts, or follow state administrative procedures before bringing a lawsuit in the federal courts. The Supreme Court rejected such a contention over twelve years ago in Patsy v. Board of Regents, 457 U.S. 496, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982).
 
 
 77
 EDMONDSON, Circuit Judge, concurring in judgment:
 
 
 78
 In its application, substantive due process is a puzzling concept. I agree that an allegation of injury resulting from a biased decision maker in a case like this one presents not a substantive due process claim, but a procedural due process claim. I also agree that McKinney is bound by this conclusion.
 
 
 79
 But today's court opinion speaks of many other things that seem unnecessary to deciding this case. Some of these other things may be important. I would prefer to discuss them when doing so is essential to deciding a concrete case.
 
 
 80
 I concur in the judgment.
 
 
 
 *
 Senior U.S. Circuit Judge Fay, who was a member of the en banc court which heard oral argument in this case, took senior status on January 19, 1994, and therefore did not participate in this decision
 Judge Barkett became a member of the court after October 19, 1993, when this case was argued and taken under submission. She has elected not to participate in this decision.
 
 
 [1]
 McKinney v. Pate, 985 F.2d 1502 (11th Cir.), opinion vacated, 994 F.2d 772, 773 (11th Cir.1993)
 
 
 [2]
 We have jurisdiction over this appeal pursuant to 28 U.S.C. Sec. 1291 (1988)
 
 
 [3]
 Because this appeal challenges the district court's entry of judgment notwithstanding the verdict, we view the evidence set before the jury in the light most favorable to appellant McKinney
 
 
 [4]
 The Notice alleged that McKinney had failed to provide direction to his department and that, as a result, the performance of the Building Division staff was deficient. Specifically, the Board cited the staff's poor productivity and lack of enthusiasm for its work, its negligence in answering phones, and its wrongful issuance of permits. In addition, the Board's reasons included statements concerning the poor performance of building inspectors and assertions that McKinney had exceeded limits placed on his budget and his authority. Finally, the document mentioned--as an "incidental"--that "Mr. McKinney used very poor judgement [sic] in the building of his house" by building a home not approved by the Plans Examiner; however, the Board stated, "except for poor judgement [sic], this [charge] is not included as part of [the Board's] disciplinary procedure."
 
 
 [5]
 Count two, against Pate and Shannin, was a pendant state claim under Florida law for wrongful injury to McKinney's employment. The district court disposed of this count on defendants' motion for summary judgment; it is not before us on appeal. Pate and Shannin were defendants--along with the Board--to the first count of McKinney's complaint as well; once the court granted summary judgment in favor of Pate and Shannin on count two, however, McKinney voluntarily dismissed them from the first count and thus from the case. This action left the Board as the only defendant in the case
 
 
 [6]
 McKinney also sought equitable relief in the form of reinstatement to his position with back-pay and benefits. McKinney did not pursue this claim in the district court (choosing instead to recover compensation at the hands of the jury for his claimed injuries); accordingly, his claim for equitable relief is not before us
 
 
 [7]
 An alternate substantive due process test finds a violation if the questioned governmental action "shocks the conscience" of federal judges. Cf. Rochin v. California, 342 U.S. 165, 172, 72 S.Ct. 205, 209, 96 L.Ed. 183 (1952). The Rochin standard has no place in a civil case for money damages. See, e.g., Gilmere v. City of Atlanta, 774 F.2d 1495, 1511 n. 21 (11th Cir.1985) (en banc) (Tjoflat, J., concurring in part and dissenting in part), cert. denied, 476 U.S. 1115, 106 S.Ct. 1970, 90 L.Ed.2d 654 (1986)
 In Rochin, a convicted defendant claimed that his right to a fair trial was violated because improperly seized evidence--evidence seized in a fashion that would "shock the conscience"--was admitted at trial against him. The Court held that the evidence could not be admitted; the Court therefore reversed the conviction. Thus, Rochin in no way created a substantive right on which claimants might claim civil damages.
 
 
 [8]
 Incorporation, which we consider to be a subset of the substantive component of the Due Process Clause, also may be considered a third, distinct constitutional protection supplementing procedural due process and substantive due process. When the Supreme Court has ruled that a right based in the Bill of Rights should be incorporated against the states, however, the Court effectively has determined that the questioned right is, in Justice Cardozo's famous phrase, "implicit in the concept of ordered liberty." Palko, 302 U.S. at 325, 58 S.Ct. at 149. Because it is "implicit," we believe the right necessarily merits protection under the substantive component of the Due Process Clause
 In any event, we quickly can dispose of any notion that McKinney's claim is based on an incorporated right. McKinney asserted no such right in the district court; in addition, the facts indicate that no freedom protected by the Bill of Rights is implicated.
 
 
 [9]
 When discussing substantive due process protection in this opinion, it is crucial to note the distinction between "legislative" acts and "non-legislative" or "executive" acts, see Greenholtz v. Inmates of Nebraska Penal and Correctional Complex, 442 U.S. 1, 7, 99 S.Ct. 2100, 2104, 60 L.Ed.2d 668 (1979)
 Executive acts characteristically apply to a limited number of persons (and often to only one person); executive acts typically arise from the ministerial or administrative activities of members of the executive branch. The most common examples are employment terminations, e.g., Roth, 408 U.S. at 5066, 92 S.Ct. at 2703. (The substantive/procedural distinctions we discuss in this opinion are appropriate to cases--like this one--involving non-legislative acts).
 Legislative acts, on the other hand, generally apply to a larger segment of--if not all of--society; laws and broad-ranging executive regulations are the most common examples. The analysis, and the substantive/procedural distinction discussed above, that is appropriate for executive acts is inappropriate for legislative acts. For instance, only when addressing legislative acts has the Supreme Court mandated that states must demonstrate that they are violating private interests only as necessary to promote state interests. See, e.g., Foucha v. Louisiana, --- U.S. ----, ----, 112 S.Ct. 1780, 1804, 118 L.Ed.2d 437 (1992) (Thomas, J., dissenting); Bowers v. Hardwick, 478 U.S. 186, 106 S.Ct. 2841, 92 L.Ed.2d 140 (1986); Roe v. Wade, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973). A similar balancing test is not found in executive-act cases. Legislative-act cases therefore are distinguishable from the case at hand.
 The Supreme Court's decision in Harrah Ind. School Dist. v. Martin, 440 U.S. 194, 99 S.Ct. 1062, 59 L.Ed.2d 248 (1979), on which McKinney relies, is not to the contrary. There, the School Board instituted a new, prospective rule that precluded renewal of the contracts of teachers who refused to take continuing education courses. Martin refused to take the courses, the School Board refused to renew her contract, and Martin sued, alleging a substantive due process violation. Even though the School Board had applied its rule only to Martin, the Supreme Court examined the case as one involving a legislative act; hence, the Court analyzed the rule itself, not the School Board's application of the rule to Martin. Id. at 198-99, 99 S.Ct. at 1064. Using a balancing test, the Court concluded that there was a rational connection between the School Board's action (the adoption of the rule, not the application of the rule to Martin) and the School Board's interest in providing its students with well-trained teachers; hence, there was no substantive due process violation. Like all legislative-act cases, then, Harrah is distinguishable from McKinney's case.
 
 
 [10]
 The substantive due process deprivation therefore may be likened to a Fifth Amendment "taking." In the typical takings case, the government condemns private property and must compensate the property's owner for the value of the property taken. In a substantive due process deprivation, by comparison, the government has deprived a person of a property or liberty interest and must compensate the interest's owner for the value of the interest taken. In employment cases, if a substantive due process claim lies, the value is measured in terms of lost wages and benefits (both past and future)
 
 
 [11]
 Of course, if the claimant elects not to seek a remedial hearing, no compensatory damages may be awarded either
 
 
 [12]
 In this case, treating McKinney's loss of employment as a deprivation of a substantive, rather than a procedural, due process right resulted in a substantial monetary award--$145,000; McKinney recovered the wages lost from the date of his termination to the date of his anticipated retirement (in conformance with the district court's instruction to the jury). Had the loss been treated as a deprivation of procedural due process, however, McKinney's monetary recovery would have been limited to the wages lost from the time of his termination through the time of the court's judgment. That recovery could have been supplemented, however, with equitable relief (such as reinstatement)
 
 
 [13]
 We have resolved other, similar, cases through procedural reasoning, asking whether the employee had a state-created entitlement to the job, and, if so, whether the state had provided constitutionally adequate procedures before termination. See, e.g., Lee v. Hutson, 810 F.2d 1030, 1032-33 (11th Cir.1987) (finding that allegations of numerous procedural defects did not make out a substantive due process claim)
 In teacher termination cases involving allegations of violations of both procedural and substantive due process, we have inquired "whether the procedures followed by the school authorities comported with due process requirements, and, if so, whether the action taken is supported by substantial evidence." Holley v. Seminole County Sch. Dist., 755 F.2d 1492, 1496 (11th Cir.1985) (quoting Viverette v. Lurleen B. Wallace State Junior College, 587 F.2d 191, 193 (5th Cir.1979)); see also Hatcher v. Board of Pub. Educ., 809 F.2d 1546, 1552 (11th Cir.1987). The first prong of this test involves constitutional assessment of the procedures used to effect the termination. The second prong, a "limited substantive review," assures that there is "substantial evidence" for the decision and, thus, "a rational basis for the deprivation of an individual's property." Holley, 755 F.2d at 1499. This is an appropriate, essentially procedural, review of the sufficiency of the evidence. It is unfortunate, however, that we have invited litigants to allege violations of substantive due process in order to trigger this analysis.
 
 
 [14]
 The latent confusion between legislative and non-legislative (or executive) acts, see supra note 9, is made manifest in Hearn. In that case, where a terminated employee challenged an executive act, we cited Nebbia, where a legislative act (to wit, a law) was at issue. It is imperative that a stricter segregation of these two distinct case-categories be maintained
 
 
 [15]
 As the text indicates, we are not using this case to eviscerate all of our substantive due process precedent. As we discuss above, there continue to be rights that a state may not remove, regardless of the process, as well as actions that can not be countenanced, regardless of the appropriateness of the process. For instance, actions such as those in Gilmere, 774 F.2d 1495 (11th Cir.1985) (finding substantive due process violation in case in which police officers beat, shot, and killed individual in making arrest), still are subject to suit under section 1983 based on substantive due process grounds; those holdings are not affected by this case
 
 
 [16]
 It cannot be disputed that criminal defendants often face losses of liberty significantly greater than the loss of employment rights McKinney claims
 
 
 [17]
 In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir.1981), the Eleventh Circuit adopted as binding precedent all cases decided by the Fifth Circuit before close of business on September 30, 1981
 
 
 [18]
 Significantly, McKinney did not allege in his complaint that the state procedures were inadequate
 
 
 [19]
 In analyzing the scope of review adopted by Florida circuit courts (the trial courts of general jurisdiction), the Long court distinguished between county court judgments, which are "presumed to have been correctly reached in an impartial and detached judicial forum," and administrative actions, which are "entitled to none of the deference due initial judicial action[s]." Id. at 942 (emphasis added). The court also noted that separation of powers principles mandated that the judicial branch conduct a full review of executive action in order "to prevent arbitrary fact-finding and actions by the executive." Id. Given this heightened concern on the part of the Florida courts for ensuring that the executive branch accords an employee due process, McKinney's plaint that he is without a remedy in the Florida courts rings hollow
 
 
 [20]
 Judge Hatchett, citing Patsy v. Board of Regents, 457 U.S. 496, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982), asserts, concurring specially in the court's opinion, that a claimant need not seek relief in state court before repairing to federal court; he thus correctly rejects any intimation of an "exhaustion" requirement that might be read into today's decision. Patsy and the exhaustion doctrine it espouses, however, are inapposite to this case
 In Patsy, the Supreme Court held that section 1983 plaintiffs were not required to avail themselves of available state remedies before suing in federal court; the Court's holding presumed the presence of a valid constitutional claim. In this case, however, McKinney cannot state a valid constitutional claim under Parratt and Bishop because Florida provides an adequate process to remedy McKinney's alleged injury. McKinney's case fails, therefore, not for want of exhaustion; indeed, exhaustion is irrelevant to our decision and finds no mention in the opinion. Rather, McKinney's case fails because he fails to state a procedural due process claim under Parratt and its progeny that would give rise to a section 1983 suit.
 
 
 [21]
 One might argue that the doctrine of stare decisis mandates that we continue to follow our precedent and reinstate the jury award, even though it is not consistent with the precedent set by the Supreme Court, until the Supreme Court addresses the issue. As stare decisis is a hallmark of our judicial system, this argument is not without appeal
 Stare decisis, however, "is not an inexorable command.... Indeed, when [a] Court reexamines a prior holding, its judgment is customarily informed by a series of prudential and pragmatic considerations designed to test the consistency of overruling a prior decision with the ideal of the rule of law, and to gauge the respective costs of reaffirming and overruling a prior case." Casey, --- U.S. at ----, 112 S.Ct. at 2808 (citations omitted).
 Since we have determined that our precedent is incorrect, we must also determine what weight to give to that albeit errant precedent. It must be recalled that this is the first time this court sitting en banc has addressed this issue; thus, the implications of stare decisis are less weighty than if we were overturning a precedent established by the court en banc.
 Since we find that granting a substantive due process cause of action to individuals in McKinney's position produces several disfavored consequences, we conclude that the pragmatic and prudential considerations supporting overruling outweigh the considerations that support the doctrine of stare decisis.
 
 
 [22]
 For a more detailed examination of the three styles of application (retroactive, prospective, and selectively prospective), see James B. Beam Distilling Co. v. Georgia, 501 U.S. 529, ---- - ----, 111 S.Ct. 2439, 2443-45, 115 L.Ed.2d 481 (1991) (opinion of Souter, J.)
 
 
 [23]
 Refusing to apply the new rule retroactively, as McKinney desires, would also produce inequities--for defendants in other pending cases and all other state and local governmental bodies that have discharged employees and still may be subject to suit
 
 
 [24]
 The Supreme Court has not indicated whether the party seeking prospective-only application satisfies the Chevron Oil test only after meeting all three factors or, rather, after demonstrating that the factors supporting prospectivity outweigh those supporting retroactivity. No panel of this court has conclusively decided the issue, either
 Both courts, however, have used language suggesting that a balancing approach is appropriate. For instance, in Beam, five justices signed on to opinions using balancing language; Justice O'Connor's dissent was strongest, stating that the second Chevron Oil factor must be "weigh[ed] in the balance" against the first and third factors. 501 U.S. at ----, 111 S.Ct. at 2455. Similarly, a panel of this court has noted that the "three separate factors are to be weighed in deciding the nonretroactivity question." Ackinclose v. Palm Beach County, 845 F.2d 931, 933 (11th Cir.1988) (emphasis added).
 Because McKinney's case fails under either standard, we do not today adopt either standard for Chevron Oil jurisprudence in this circuit.