Mary G. CARTER, Plaintiff,

v.

William HARRIS, individually and in his official capacity; Fob James, in his official capacity; Buford Crutcher, in his official capacity; B. Maxine Coley, in her official capacity; James C. Cox, in his official capacity; Oscar Crawley, in his official capacity; Toreatha M. Johnson, in her official capacity; Larry H. Keener, in his official capacity; Patsy B. Parker, in her official capacity; Robert B. Jones, in his official capacity; Frankye H. Underwood, in his official capacity; Donald Watkins, in his official capacity; Catherine W. Wright, in her official capacity; and Joe L. Reed, in his official capacity, Defendants.

No. Civ.A.98–A–1163–N.

United States District Court,
M.D. Alabama,
Northern Division.

Sept. 3, 1999.

Joseph Peter Van Heest, Glassroth & Associates, Montgomery, AL, for Mary G. Carter, plaintiff.

Terry G. Davis, Terry G. Davis, P.C., Montgomery, AL, J. Allen Schreiber, Jennifer A. McCammon, Lloyd, Schreiber & Gray, P.C., Birmingham, AL, Kenneth Lamar Thomas, Thomas, Means, Gillis, Devlin, Robinson & Seay, PC, Montgomery, AL, A. Wesley Pitters, A. Wesley Pitters, P.C., Montgomery, AL, Valerie L. Acoff, Thomas, Means, Gillis, Devlin, Robinson & Seay, PC, Birmingham, AL, for Defendants.

## MEMORANDUM OPINION

ALBRITTON, Chief Judge.

### I. *INTRODUCTION*

This case is before the court on a Motion for Summary Judgment filed by the Defendants on June 30, 1999 (Doc. # 37).

The Plaintiff originally filed her Complaint in this court on October 13, 1998. She also filed an amendment to the Complaint correcting the name of one of the Defendants on October 13, 1998. In the Complaint, the Plaintiff brings claims for

violation of procedural due process (Counts I, II, III, IV, and V) and outrageous conduct (Count VI).

The Defendants had originally filed a Motion to Dismiss which included the defense of qualified immunity. The court set a briefing schedule on the Motion to Dismiss. In response to that Order, the Defendants informed the court that they elected not to submit a brief and asked that the Motion to Dismiss be denied, which was done. An Answer was filed, which did not include a qualified immunity defense. The Defendants, represented by different counsel, then filed an untimely motion to amend their Answer so as to add the affirmative defense of qualified immunity. On July 1, 1999, this court entered an Order denying as untimely and unfairly prejudicial the Defendants' Motion to Amend the Answer so as to add the affirmative defense of qualified immunity. Accordingly, no affirmative defense of qualified immunity will be evaluated by this court in connection with the Motion for Summary Judgment.

At the request of all of the parties, the court held oral argument on the Motion for Summary Judgment on August 13, 1998. Based on the briefs of the parties, and the arguments made at oral argument, the Motion for Summary Judgment is due to be GRANTED in part and DENIED in part.

## II. *SUMMARY JUDGMENT STANDARD*

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323, 106 S.Ct. 2548. The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing, or pointing out to, the district court that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322–24, 106 S.Ct. 2548.

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " *Id.* at 324, 106 S.Ct. 2548. To avoid summary judgment, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). On the other hand, the evidence of the nonmovant must be believed and all justifiable inferences must be drawn in its favor. *Anderson v. Liberty Lobby,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).

## III. *FACTS*

The submissions of the parties establish the following facts viewed in a light most favorable to the non-movant:

The Plaintiff, Mary G. Carter ("Carter"), was a permanent, non-faculty, staff employee at Alabama State University ("ASU") in Montgomery, Alabama. She

was employed as a Residence Hall Night Coordinator. The Non–Academic Staff Handbook of ASU ("Handbook") states that a permanent employee may not be dismissed except through due process procedures set forth in the Handbook.

In February of 1997, Arthur Scott, the Assistant Director of Housing and Residential Life and Carter's supervisor, found Carter asleep during her shift. Carter met with Scott and the Director of Housing and Residential Life, Gloria Julius. Carter admitted that she had been sleeping and was suspended without pay for ten days, in accordance with the Disciplinary Guidelines of the Handbook.

In late September 1997, Scott found Carter sitting on a couch with her shoes off, her eyes closed, and her head resting on the back of the couch. Scott believed that Carter was asleep. Scott recommended that ASU initiate procedures to terminate Carter, since the alleged second violation required termination under the Handbook.

Carter met with the Assistant Vice President for Student Affairs, D. Jason DeSousa, regarding the recommendation that she be terminated. Carter requested a hearing on the matter. Carter later participated in the selection of a hearing officer by striking one of the three persons listed as potential hearing officers.

At the January 16, 1997 hearing on the termination recommendation, Carter was represented by counsel and ASU was represented by Arthur Scott. Both sides were permitted to bring witnesses, offer testimony, and to cross examine the other side's witnesses. The hearing officer, Mimi McDaniel, concluded that the evidence was not sufficient to prove that the offense occurred and recommended that Carter not be terminated.

In late January 1998, the recommendation and summary report was sent to President William Harris, through Olan Wesley, the Director of Personnel and Human Relations. The report was not forwarded from Wesley to Harris until February 12, 1998.

On February 10, 1998, the Vice President of Student Affairs filed a position statement that sufficient evidence had been presented by Scott to substantiate the charge against Carter. Harris sent a note to the personnel department, asking the Office of Student Affairs to produce additional information. The Personnel Director subsequently sent two memos requesting a position statement from the Vice President of Student Affairs. In at least one memo, the Personnel Director stated that Harris needed the position statement in order to make a timely decision.

On March 24, 1998, Harris terminated Carter, effectively rejecting the recommendation of the hearing officer. On March 31, 1998, Carter was notified in writing by Wesley that Harris had approved cancellation of her contract.

Carter was informed that she could appeal the decision to the ASU Board of Trustees. She was told that to do so, she needed to file a brief by April 27, 1998. On April 24, 1998, counsel for Carter wrote a letter to Harris informing him that she was relying on an earlier letter-brief for her argument on appeal.

Harris did not submit Carter's appeal to the Board of Trustees. Instead, he construed the appeal documents as a request that he reconsider his decision. Harris reinstated Carter to her previous employment status with back pay and benefits. Harris also decided, however, that Carter would be placed on suspension with pay pending the outcome of a second de novo termination hearing.

Carter questioned Harris' authority to require a second termination hearing. She participated in selecting the hearing officer for the second hearing by striking one of the three potential hearing officers. When the hearing was held, Carter refused to participate beyond placing into the record a written and spoken objection to the authority of ASU to conduct a second hearing. Although the hearing officer stated that without her participation, a hearing

could not be held, the ASU attorney advised the hearing officer to continue with the hearing. With no evidence being submitted by Carter, the second hearing officer found that there was sufficient evidence that Carter had been sleeping on the job and recommended termination of her employment.

Carter was informed of the second hearing officer's recommendation and was permitted an opportunity to file a written statement of position. On July 21, 1998, the personnel director informed Carter that her employment had been terminated. She filed a notice of appeal to the Board of Trustees on August 5, 1998.

At a meeting in late November or early December, the Board of Trustees reviewed Carter's appeal and affirmed the termination. In reaching this determination, the Board of Trustees did not consider the first termination hearing, only the second. Carter challenges this entire course of events as violative of her rights to procedural due process under the United States Constitution and as constituting outrageous conduct under Alabama law.

## IV. *DISCUSSION*

### A. *Federal Claims*

The Defendants have moved for summary judgment on the claims against them in their official capacities, both on the grounds of immunity and the grounds that Carter has failed to present sufficient evidence to support her claims.

 The Defendants have asserted that Carter's claims are barred by the Eleventh Amendment to the United States Constitution. A state is not considered to be a "person" for purposes of § 1983 actions. *Will v. Michigan Department of State Police,* 491 U.S. 58, 70, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). ASU, a state university, is an instrumentality of the state. *Cf. Harden v. Adams,* 760 F.2d 1158 (11th Cir.1985); *Kelley v. Troy State University,* 923 F.Supp. 1494 (M.D.Ala. 1996). In addition, where a party attempts to sue a state in federal court, the Eleventh Amendment prohibits the federal court from exercising jurisdiction over the suit, except where the state has consented to be sued or waived its immunity, or where Congress has overridden the state's immunity. *See Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 98–100, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984); *Quern v. Jordan,* 440 U.S. 332, 341, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979). Neither one of these exceptions applies to Carter's § 1983 claims, however. Congress has not abrogated Eleventh Amendment immunity in § 1983 cases. *Quern,* 440 U.S. at 345, 99 S.Ct. 1139. The State of Alabama also has not waived its immunity. *Free v. Granger,* 887 F.2d 1552, 1557 (11th Cir.1989). The Defendants are sued in their official capacities as President and Trustees of ASU. Carter concedes that the Eleventh Amendment protects Harris and the members of the Board of Trustees in their official capacities from suit for money damages. *See* Plaintiff's Brief in Response, page 18. Carter points out correctly, however, that individual defendants in their official capacities are not protected from injunctive relief by the Eleventh Amendment. *See Cross v. Alabama,* 49 F.3d 1490, 1503 (11th Cir.1995). The Motion for Summary Judgment is, therefore, due to be GRANTED as to Harris and the members of the Board of Trustees in their official capacities as to the claims for monetary damages, but is DENIED to the extent that the Defendants are sued in their official capacities for prospective injunctive relief.

The Defendants have also moved for summary judgment as to the claims against Defendant Harris in his individual capacity on the grounds of qualified immunity. As Carter points out, however, this court has previously determined that the affirmative defense of qualified immunity has not been timely raised by the Defendants and that to allow an untimely assertion of this defense would unfairly prejudice Carter. Accordingly, the defense of qualified immunity is not before the court.

The Defendants also move for summary judgment on Carter's procedural due pro-

cess claims for substantive reasons.[1] The Defendants argue that the process which was provided to Carter comports with the requirements of constitutional due process, and that even if there were procedural due process violations after the first hearing, they were cured by providing Carter with a second notice and opportunity to be heard.

The analysis which must be applied in a procedural due process claim has been set out by the United States Supreme Court and the Eleventh Circuit. Although the parties in this case have not applied this analytical framework to the facts in this case, this court will do so.

■ Under the rule first set forth in *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986), the Due Process Clause of the Fourteenth Amendment is not violated by unauthorized actions of state officials if the state makes available a meaningful post-deprivation remedy. The Supreme Court subsequently applied its holding in *Parratt* to intentional acts of state officials, concluding that "an unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available." *Hudson v. Palmer*, 468 U.S. 517, 533, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984).[2]

In applying these cases, a distinction is drawn between cases in which a state process itself is challenged, and cases in which the procedures as applied are challenged. *See Bell v. City of Demopolis*, 86 F.3d 191, 192 (11th Cir.1996) (distinguishing between a challenge to state procedure itself and a challenge to state procedure as applied). The significance of the distinction is that when there is an unauthorized action by a state actor, the procedural due process violation does not become complete unless and until the state refuses to provide due process. *McKinney v. Pate*, 20 F.3d 1550 (11th Cir.1994).

Under this framework, there are essentially three issues before this court: one, whether Carter was deprived of a property interest without notice and a hearing; two, whether the alleged violation of due process was accomplished in accordance with or in violation of state procedures; and three, if the alleged deprivation without due process was accomplished in violation of state procedures, whether the state failed to provide an adequate state remedy.

The Defendants state that the termination process outlined in ASU's handbook is similar to the process which has been found to be sufficient under binding precedent of this circuit. The Defendants further argue that Carter has admitted that she was represented by counsel and had an opportunity to present her case, to offer witnesses, and to cross-examine the University's witnesses during her first hearing.

Carter responds that she is not challenging the process which she was afforded during her first termination hearing, and in fact states that the January 16, 1998 hearing complied with due process, but explains that she is challenging the events which occurred after that hearing. Carter argues that Harris violated the rules stat-

---

1. The Defendants have moved for summary judgment on a substantive due process claim on the grounds that such a claim is not cognizable under Eleventh Circuit precedent. *See McKinney v. Pate*, 20 F.3d 1550, 1560 (11th Cir.1994). It does not appear from the pleadings that Carter has asserted a claim for deprivation of substantive due process and, during oral argument, the attorney for Carter represented that she had not brought a sub- stantive due process claim. The Defendants' Motion for Summary Judgment is, therefore, due to be DENIED as moot as to any such claim.

2. The Defendants do not appear to dispute that Carter had a property interest in her employment which is protected by procedural due process.

ed in the ASU handbook because Harris did not timely notify Carter of his decision following the recommendation of hearing officer McDaniel in January 1998, and that Harris failed to notify Carter personally. The ASU Handbook provides

> Within seven[3] days after reviewing the decision of the Hearing Officer, the President shall notify the employee in writing of the action he or she proposes to take with regard to cancellation of contract action. If the action proposed involves a rejection or modification of the decision of the Hearing Officer, the President shall explain the reason for the rejection or modification in the notice to the employee.

Defendants' Exhibit 3, § 6.3.1(G)(1).

Carter also states that Harris violated ASU procedure by failing to give a reason for his implicit rejection of the hearing officer's recommendation. As indicated above, ASU's policy Handbook states that if the President's action involves a rejection or modification of the decision of the Hearing Officer, the President shall explain the reason for said rejection or modification in the notice to the employee. *Id.* While the Defendants point out that the notice to Carter stated that Carter was being terminated for "Neglect of Duty," there was no stated reason why Harris came to a conclusion which was different from that of the Hearing Officer. In other words, a reason was given for the termination, but not for the rejection of the Hearing Officer's recommendation that Carter not be terminated.

In addition to these actions by Harris which Carter contends were contrary to stated ASU policies, Carter also argues that Harris acted arbitrarily and capriciously and beyond the authority which was given to him under the Handbook. Carter points out that, in his deposition, Harris states that he would "suspect" that the case file on Carter had a transcript of the first termination hearing and a tape of the hearing, but that he did not listen to the tape. Harris Deposition, page 48.

Carter also points out that there is no provision in the Handbook which would allow Harris to interrupt and prevent Carter's appeal to the Board of Trustees and to compel her to attend a second hearing. The Handbook instead requires the president to forward timely appeals to the Board of Trustees. *See* Defendants' Exhibit 3 § 6.3.2(2). Carter argues that, since Harris did not consider the evidence provided at the hearing, and since Carter was denied an opportunity to appeal Harris' determination, and was ultimately terminated based on the second hearing in which she presented no evidence, the notice and opportunity to be heard which she was afforded in the first hearing were of no effect.

The Defendants take issue with Carter's description of Harris' actions. First, the Defendants state that although Carter says she was not notified by Harris of her termination, she did receive notification of her termination from Olan Wesley, and that Carter understood that she was being terminated by Harris and not Wesley. The Defendants also argue that whether or not ASU policy was violated does not resolve whether Carter was afforded constitutional due process. The Defendants cite to a decision by a judge in this district in which the court concluded that procedural due process only requires that a hearing be held within a reasonable time, not a specified time, and that absent prejudice to the plaintiff, violation of the time limit does not also violate procedural due process. *See Black v. City of Auburn,* 857 F.Supp. 1540 (M.D.Ala.1994), *aff'd without opinion,* 56 F.3d 1391 (11th Cir.1995).

The Defendants further argue that Carter has conflated the issue of "whether process is due" with the issue of "what process is due." In making this argument, the Defendants rely on *Davis v. Alabama State University,* 613 F.Supp. 134 (M.D.Ala.1985). In *Davis,* the plaintiff complained that the Board of Trustees of ASU had not entertained her appeal from

---

**3.** In another provision, the Handbook sets the deadline at 20 days.

a decision by the president to terminate her employment. The court reasoned that not all violations of state statutory or regulatory procedure rise to the level of a constitutional deprivation. *Davis*, 613 F.Supp. at 138. Because the Constitution does not guarantee an appeal to the Board, the plaintiff had not established a claim for violation of due process. The Defendants argue that, in this case, the Constitution requires notice, a fair hearing, and the right to present witnesses and documentary evidence, which were provided to Carter. The Defendants argue that whether or not the requirements of the Handbook were met, the requirements of the Constitution were not violated.

Carter responds that the constitutional guarantees of notice and an opportunity to be heard have been undermined in this case. She admits that she was afforded due process in the first hearing, but argues that, in violating ASU procedures in untimely rejecting the hearing officer's recommendation without explanation, interrupting the appeal, and requiring a second hearing, Harris went outside of his authority.

■ As the Seventh Circuit has recently explained, "due process requires that an employee be given the chance to tell her side of the story, and that the agency be willing to listen. Otherwise, the 'opportunity to respond' required by *Loudermill* is no opportunity at all." *Ryan v. Illinois Department of Children and Family Services*, 185 F.3d 751 (7th Cir.1999). In *Ryan*, the court held that a plaintiff who can present evidence that the hearing was a sham is entitled to go forward with a procedural due process claim. *Id.* at 762; *see also Adams v. Sewell*, 946 F.2d 757 (11th Cir.1991), *overruled on other grounds by*, *McKinney v. Pate*, 20 F.3d 1550 (11th Cir.1994) (acknowledging the concept that a "sham" hearing can violate due process).

■ The court finds that the concept of a "sham" hearing is helpful to the analysis in this case. If the notice and hearing which Carter was afforded were rendered meaningless, then Carter, like a person who has been given a pro forma or sham hearing, was not afforded due process. The procedures provided by the ASU Handbook, while not themselves constitutionally required, are the mechanism by which employees are afforded notice and an opportunity to be heard. Harris' failure to follow the mandated procedures allowed him to ignore the protections which were provided to make the opportunity to be heard meaningful. In Carter's case, ASU policies provided Carter with notice and an opportunity to be heard, but Harris' actions subsequent to the hearing essentially caused the first hearing to be of no effect. "This is not, of course, because the Constitution requires the University to follow the letter of its own procedures, but because [the plaintiff] is entitled to constitutionally sufficient procedures" and she has shown that she was not furnished them. *Levenstein v. Salafsky*, 164 F.3d 345, 351 (7th Cir.1998).

It is a far different matter for the President of ASU to fire an employee after a hearing officer, following a full evidentiary hearing, has found the evidence insufficient to prove the offense charged and recommended against firing, than for him to do so after a hearing officer has found the charge to be established and recommended termination. And, the posture of the case before the Board of Trustees on appeal would be quite different. Here, the President, faced with a finding and recommendation with which he disagreed, simply scuttled the hearing, rather than allowing an appeal, and ordered another one. For aught that appears from the evidence, he might have felt free to continue to do so, hearing after hearing, until some hearing officer "got it right." This makes a mockery of the right to a due process hearing. This court concludes, therefore, that Carter presented sufficient evidence to establish that there was a deprivation of a property interest without notice and a hearing.

■ The court must now determine whether this deprivation of a property in-

terest falls within the *Parratt/Hudson* rule; that is, whether it was accomplished by Harris in violation of ASU procedure. The essence of Carter's claim is that the procedures provided by ASU were violated in her case. Although Harris has maintained in his deposition that his actions were in accordance with University policy, since the Handbook requires him to state why he was not following the hearing officer's recommendation, and the Handbook does not provide for any mechanism whereby the President can interrupt the appeals process and require a second hearing, but in fact requires the President to forward appeals to the Board of Trustees, the court concludes that Carter has presented sufficient evidence to establish that ASU policy was violated by Harris. Carter's claim that the unauthorized actions of Harris deprived her of her property right in violation of her due process rights, therefore, falls within the rule set forth in *Parratt/Hudson.*

To show that she has a viable due process claim under *Parratt/Hudson,* Carter must demonstrate that state law remedies are inadequate. *McKinney v. Pate,* 20 F.3d 1550, 1557 (11th Cir.1994) (stating that the deprivation of due process is not complete until the state fails to provide an adequate remedy.) In granting the parties' request for oral argument on the Motion for Summary Judgment, the court invited the parties to address the adequacy of state remedies, particularly in light of *Bell v. City of Demopolis,* 86 F.3d 191 (11th Cir.1996). In deciding whether Carter has adequate state remedies available to her, therefore, the court will analyze primarily the remedies which were identified at oral argument.

Carter contends that there were no state remedies available to her to review the actions of Harris, even though the Plaintiff in *Bell* did have such remedies.

The Defendants initially argued that Carter had available to her a claim for wrongful termination and a claim for breach of contract. The Defendants could point to no mechanism whereby Carter

could bring a wrongful termination claim, however. Carter also pointed out that the conduct she has challenged was on the part of Harris, and her contract was with ASU, not Harris. Carter further argued that she could not recover for breach of contract against ASU because ASU is protected from suit for damages by the Eleventh Amendment. At oral argument, the Defendants also argued that individuals can bring a claim before the Board of Adjustment, but such a proceeding is for a claim for money damages and would not involve review of a termination decision. *See Hawkins v. Board of Adjustment,* 242 Ala. 547, 7 So.2d 775, 777 (1942) (stating that the Board of Adjustment does not sit as a court, but acts when a state agency has acted to create a moral obligation). Because there is no basis from which to conclude that Carter would actually be entitled to any relief under the above-stated remedies, the court concludes that none of these state law remedies pointed to during oral argument are adequate state law remedies within the meaning of *Parratt/Hudson.*

The Defendants also relied at oral argument on the Eleventh Circuit case in which the court described Alabama state law remedies as being adequate. *See Bell,* 86 F.3d at 191. In *Bell,* the Eleventh Circuit stated that "Alabama courts ... review employment termination proceedings both to whether they are supported by substantial evidence and to see that the proceedings comport with procedural due process." *Bell,* 86 F.3d at 192 (citing *Ex Parte Tuskegee,* 447 So.2d 713 (Ala.1984) and *Guinn v. Eufaula,* 437 So.2d 516 (Ala. 1983)). The apparent breadth of the Eleventh Circuit's conclusion must, however, be examined in light of the cases upon which the court relied before applying this general statement to the facts in this case.

In *Bell,* the Eleventh Circuit compared the remedies available to the plaintiff under Alabama law to the remedies which were available to the plaintiff in *McKinney* under Florida law. In *McKinney,* the

court found that the plaintiff had an adequate state remedy because Florida courts have the power to review employment termination cases. *McKinney,* 20 F.3d at 1556. The court in *Bell* found that similar remedies were available to the plaintiff in that case. *Bell,* 86 F.3d at 192. In so finding, the court relied on two cases, *Ex Parte Tuskegee* and *Guinn.* Both of these cases, and *Bell* itself, involved suits by police officers against municipalities.

The significance of the fact that the *Bell, Ex Parte Tuskegee,* and *Guinn* cases all involved claims by police officers against a city is that Alabama case law in which police officers have challenged their terminations reveals that there is a requirement under Alabama law that cities of a particular size have a civil service system which covers police officers. *Ex Parte Tuskegee,* 447 So.2d at 714. Apparently, when there is a civil service system, that system itself provides for a mechanism whereby a termination decision can be appealed to the state circuit court in which the city is found. *See Guthrie v. Civil Service Board of the City of Jasper,* 342 So.2d 372, 374 (Ala.Civ.App.1977). The system itself provides for review of employment decisions by Alabama courts, independent of any state court contract action. This mechanism, therefore, provides the means of review of employment decisions to which the Eleventh Circuit referred in *Bell.*

The court has been pointed to no mechanism, and has found none on independent review, whereby employment decisions of ASU can be appealed to the state circuit court. In fact, the Defendants have never contended, whether in brief or in oral argument, that an employment decision by ASU is appealable to the state circuit court. In the absence of some evidence of a policy or statute whereby employment decisions at ASU are subject to review by Alabama courts, the court cannot conclude that the broad statement in *Bell* concerning available remedies is dispositive on the issue of whether adequate state remedies were available to Carter.

The Defendants also argued that Carter could have brought a 42 U.S.C. § 1983 claim in state court, rather than in federal court. Carter has argued that there is no precedent for requiring a plaintiff to bring a claim in state court which can be brought in federal court, especially where the claim itself is a federal claim, and the court agrees.

State and federal courts have concurrent jurisdiction over claims brought under 42 U.S.C. § 1983. *See e.g. Borges v. City of West Palm Beach,* 858 F.Supp. 174, 176 n. 3 (S.D.Fla.1993). The court does not read the *Parratt/Hudson* line of cases as requiring a plaintiff to bring a claim under § 1983 in state court. The relevant precedent refers to remedies provided by state law. *See e.g., McKinney,* 20 F.3d at 1564. Section 1983, on the other hand, is a right of action for the vindication of federal constitutional rights, not a right of action for the vindication of state rights. *See* 42 U.S.C. § 1983. In addition, the procedural due process precedent makes it clear that there is a distinction to be drawn between exhaustion of state remedies and the requirement that the plaintiff show that the state has failed to provide an adequate remedy. An exhaustion requirement is based on principles of comity, while the procedural due process analysis is based on the concept that there is no constitutional violation if a plaintiff has not been deprived of a protected interest without due process of law. *See Fetner v. City of Roanoke,* 813 F.2d 1183, 1185 n. 6 (11th Cir.1987). If there has been no constitutional deprivation, then there is no § 1983 claim, whether the plaintiff is proceeding in state or federal court. Accordingly, the court concludes that there is no requirement that a plaintiff pursue a § 1983 claim in state, rather than federal, court.

The Defendants also make the argument that Carter had an adequate remedy because any procedural defects which may have existed as a result of Harris' actions were cured when the Defendants provided Carter a second notice and opportunity to

be heard. Carter responds that procedural defects were not cured through the second hearing and post-termination procedure, but were in fact aggravated by the second termination hearing. Carter states that the unilateral decision by Harris to put Carter on paid suspension pending the outcome of a second hearing was not a procedure which was provided for in the ASU manual. Carter states that the second hearing was akin to a second prosecution for the same charge.

Carter contests the Defendants' argument that the second hearing was even intended to be curative. Harris' testimony on this issue is as follows:

Q: And do you stand by your statement of May 12th that the decision to reinstate Mrs. Carter and to have a second hearing was designed to protect her rights?

A: Yes.

Q: If the hearing officer in the first hearing had found a recommendation that she should not be terminated and you are aware of nothing wrong with the first hearing, why would it be necessary to have a second hearing?

A: I didn't take the decision—I didn't take the decision to have a second hearing based on something being wrong with the hearing. I took the decision based on the fact that I had disagreed with the result. It had nothing to do with the process. Results, I disagreed.

Harris Deposition, page 90.

Carter argues that while she had to comply with the time limits put in place for making an appeal, Harris simply ignored the requirements placed on him, and that Harris now argues that violation of ASU policy regarding the time limit was cured by requiring Carter to have a second hearing. Carter finds fault with the conclusion that, if Harris could cure his failure to comply with ASU rules by requiring a second hearing, Harris' cure of the procedural due process violation would allow him to seek the result he wanted from a second hearing officer. Carter further argues that because the Board of Trustees

ultimately upheld her termination based only on the second hearing, without considering the evidence presented in the first hearing or the hearing officer's recommendation, she was denied due process and the procedural defects were not remedied by the second hearing and appeal.

The excerpt from Harris' deposition raises the question of whether the second hearing was a "sham." As the Seventh Circuit recognized in *Ryan v. Illinois Department of Children and Family Services,* if a plaintiff provides evidence that a decision has already been made and the hearing would only be a sham, the plaintiff can proceed on a procedural due process claim. *Ryan,* 185 F.3d at 761. The evidence from Harris' deposition at least raises the question as to whether Harris was merely seeking a different result from the hearing officer to justify a decision to terminate Carter which had already been made.

In addition, these facts are not unlike the situation in the Eleventh Circuit's *Adams v. Sewell* decision, which was reversed on other grounds. In *Adams,* the plaintiff contended that his pre-termination hearing was flawed. He also faulted several aspects of his post-deprivation hearing, including that he was not allowed to present his witnesses by the lateness of the hour and was not given a continuance. The plaintiff and his attorney had objected at the hearing to the unfairness of the proceedings and had walked out of the hearing without offering any evidence to rebut the case against him. Considering both the pre-termination and post-termination hearings' flaws, the Eleventh Circuit denied an appeal of the jury verdict for the plaintiff on his procedural due process claim, finding that the pre-termination problems were not "cured" by the post-termination hearing. *Adams,* 946 F.2d at 766.

Similarly, in this case, the court cannot conclude that the second hearing, which proceeded without Carter despite her objections to its fairness, cured the procedur-

al deficiencies created by Harris after the first hearing. The evidence of Harris' intent to seek a second hearing because he did not agree with the result of the first hearing, combined with the facts that there are no provisions in the Handbook for interrupting and preventing an employee's appeal to the Board of Trustees, or requiring a second hearing, is a sufficient basis from which to conclude that the second hearing did not cure a due process violation. In fact, Harris' subsequent actions prevented the due process violation from being cured through administrative channels because he prevented appeal of the first action, and the subsequent review by the Board of Trustees was a review only of the second, and not the first, hearing. The court cannot conclude that rendering a first notice and hearing meaningless and proceeding with a second hearing in violation of state procedures was an adequate state remedy.

The court has reviewed all of the examples of state law remedies to which it has been pointed and concludes, in light of relevant precedent, that Carter has provided sufficient evidence from which to conclude that there were no adequate state law remedies available to her for the deprivation of due process which was committed when Harris ignored, and acted independently of, the first notice and hearing which was provided to Carter under ASU policy. Therefore, even though Carter has challenged actions which were in violation of, not in accordance with, state procedures, the due process violation has been completed because there are no adequate state law remedies available to Carter. *See McKinney*, 20 F.3d at 1557.

■ The Defendants have also argued that Carter waived her rights to procedural due process. As the Defendants have pointed out, a public employee may waive his or her rights to procedural due process. *See Kaprelian v. Texas Woman's University*, 509 F.2d 133 (5th Cir.1975). In this case, the Defendants state that Carter waived her rights by initially participating in and then abandoning the sec-

ond hearing, submitting a position statement, and subsequently appealing to the Board of Trustees.

Carter strenuously objects that she waived any procedural due process rights. She does not contest that she participated in the process of choosing the hearing officer and that she made a statement through counsel at the hearing, but states that she participated in the hearing to this limited extent because she did not want to be viewed as waiving her right to rely on the results of the first hearing. Carter voiced her opposition to the second hearing and had been informed by counsel for ASU that her objections to the second hearing could be placed on the record at the second hearing. *See* Plaintiff's Exhibit 14. The facts before this court indicate, therefore, that Carter challenged the ability of ASU to conduct a second hearing, was told that she would have to place her objections on the record, that she complied with these directions, and then appealed the determination on the basis that there was no authority to conduct the second hearing. The court cannot conclude that, under the facts that Carter followed the Defendants' instructions that she protest the second hearing on the record, the Defendants have established waiver as a matter of law. *Cf. Brown v. Georgia Dept. of Revenue*, 881 F.2d 1018, 1027 (11th Cir. 1989) (finding that there was no waiver of procedural due process rights where the defendant led the plaintiff-employee to believe that he had no appeal rights). Accordingly, the court concludes that Carter may proceed on her procedural due process claim.

### B. *State Law Claim*

■ Carter has also brought a claim under Alabama state law for outrageous conduct. To recover under the tort of outrageous conduct in Alabama, a plaintiff must prove that: (1) the defendant either intended to inflict emotional distress, or knew or should have known that emotional distress was likely to result from its conduct; (2) the defendant's conduct was ex-

treme and outrageous; and (3) the defendant's conduct caused emotional distress so severe that no reasonable person could be expected to endure it. *Jackson v. Alabama Power Co.*, 630 So.2d 439, 440 (Ala. 1993) (citing *American Rd. Serv. Co. v. Inmon*, 394 So.2d 361 (Ala.1980) (adopting the tort of outrageous conduct in Alabama)).

To establish a claim for outrageous conduct, the conduct complained of must be "so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society." *Id.* The tort of outrageous conduct only applies "in the most egregious circumstances." *Thomas v. BSE Indus. Contractors, Inc.*, 624 So.2d 1041, 1044 (Ala.1993). The tort of outrageous conduct does not provide recovery for mere insults, indignations, threats, annoyances, petty oppressions, or other trivialities. *See Inmon*, 394 So.2d at 364–365.

The Defendants argue that the evidence which has been presented by Carter does not establish that the conduct which she has attributed to Harris rises to the level of outrageous conduct under Alabama law. Carter responds that the actions of Harris meet the elements of an outrageous conduct claim, so that the claim should be presented to a jury.

The initial determination as to whether evidence is sufficiently extreme or outrageous to support a cause of action for outrageous conduct is for the trial court to make as a matter of law. *See McElroy v. TNS Mills, Inc.*, 953 F.Supp. 1383 (M.D.Ala.1996). The Alabama Supreme Court has indicated that there are three limited circumstances under which a claim of outrageous conduct can go to the jury: cases having to do with wrongful conduct in the context of family burials; cases where insurance agents employed heavy-handed, barbaric means to coerce a settlement; and cases involving egregious sexual harassment. *Thomas v. BSE Indus. Contractors, Inc.*, 624 So.2d 1041, 1044 (Ala.1993).

Carter has argued that her case falls within these recognized categories because the Alabama Supreme Court has recognized outrageous conduct claims within the context of a claim by an employee against an employer. While the third category of outrageous conduct claims can involve employee actions against employers, that is not the distinguishing feature of that category. Instead, it is recognized as a category of egregious sexual harassment. *Id.* Because Carter's claim does not involve allegations of sexual harassment in any form, the court concludes that there are no sufficiently analogous factual circumstances under Alabama law which would allow Carter's claim to be presented to a jury. *See Moore v. Beneficial National Bank USA*, 876 F.Supp. 1247 (M.D.Ala.1995) (granting summary judgment on a claim for outrageous conduct where facts of the case did not fit into facts which had been held by the Alabama Supreme Court to constitute outrageous conduct). Summary judgment is, therefore, due to be granted as to the outrageous conduct claim under Alabama law.

## V. *CONCLUSION*

For the reasons discussed above, Defendants' Motion for Summary Judgment is due to be GRANTED in part and DENIED in part. A separate Order will be entered in accordance with this Memorandum Opinion.

## *ORDER*

In accordance with the Memorandum Opinion entered on this date it is ORDERED as follows:

1. The Defendants' Motion for Summary Judgment is GRANTED on the Plaintiff's claim for money damages against William Harris in his official capacity as President of Alabama State University and as to Fob James, Buford Crutcher, B. Maxine Coley, James C. Cox, Oscar Crawley, Toreatha M. Johnson, Larry H. Keener, Patsy B. Parker, Robert Jones Jr., Frankye H. Underwood, Donald Wat-

kins, Catherine W. Wright, and Joe L. Reed in their official capacities as Trustees of Alabama State University, and judgment is entered in favor of these Defendants on the damages claims and against the Plaintiff Mary G. Carter.

2. The Defendants' Motion for Summary Judgment is DENIED on the Plaintiff's procedural due process claim as to William Harris in his individual capacity, and as to William Harris in his official capacity as President of Alabama State University and as to Fob James, Buford Crutcher, B. Maxine Coley, James C. Cox, Oscar Crawley, Toreatha M. Johnson, Larry H. Keener, Patsy B. Parker, Robert Jones Jr., Frankye H. Underwood, Donald Watkins, Catherine W. Wright, and Joe L. Reed in their official capacities as Trustees of Alabama State University for prospective injunctive relief.

3. The Defendants' Motion for Summary Judgment is DENIED as moot as to a substantive due process claim.

4. The Defendants' Motion for Summary Judgment is GRANTED as to the Plaintiff's state law claim for outrageous conduct and judgment is entered in favor of the Defendants and against the Plaintiff on the outrageous conduct claim.