**Joel Keith HUNT, Plaintiff,**

v.

**CITY OF MULBERRY, Frank R. Satchel, Jr., and Johnnie B. Smith, Defendants.**

**No. 8:00–CV–2138–T–26TBM.**

United States District Court, M.D. Florida, Tampa Division.

Feb. 8, 2001.

Hank B. Campbell, Gray, Harris, Robinson, Lane, Trohn, Lakeland, FL, for Plaintiff.

Valeria Hendricks, Davis & Harmon, P.A., Tampa, FL, Thomas P. Scarritt, Scarritt Law Group, P.A., Tampa, FL, for City of Mulberry.

Jeffrey S. Weise, Scott D. Danahy, Brown, Ward, Salzman & Weiss, P.A., Orlando, FL, for Frank R. Satchell, Jr., Johnnie B. Smith.

## *ORDER*

LAZZARA, District Judge.

This cause comes before the Court on Defendants Frank R. Satchel, Jr. ("Satchel") and Johnnie B. Smith's ("Smith") Motion to Dismiss (Dkt.9) and Defendant City of Mulberry's ("Mulberry") Motion to Dismiss (Dkt.10). Plaintiff Joel Keith Hunt ("Hunt") filed a Memorandum in Opposition to the Motions to Dismiss (Dkt.16).

### *Plaintiff's Claims for Relief*

Hunt is proceeding on a five-count Complaint wherein he alleges the following claims: (I) denial of procedural due process in violation of 42 U.S.C. § 1983 (against all Defendants); (II) denial of substantive due process in violation of 42 U.S.C. § 1983 (against all Defendants); (III) violation of the "Police Officer's Bill of Rights," Section 112.531, et seq., Florida Statutes, (against Mulberry); (IV) defamation (against Satchel); (V) defamation (against Smith); and (VI) tortious interfer-

ence with an advantageous business relationship (against Smith).

### Plaintiff's Factual Allegations

In 1996, Hunt began employment with the City of Mulberry as a police officer. During his employment he was harassed, interfered with, and threatened on numerous occasions by Satchel, who was the Mayor of Mulberry, for properly enforcing the law, particularly with regard to various incidents and arrests involving Satchel's son. As a result of these incidents, there was a standing order in Mulberry that if any police officer became involved with Satchel or Satchel's son, that backup would be summoned and the Mulberry Chief of Police would be advised of the situation.

During a lawful stop of Satchel's son, on July 3, 1997, Satchel advised Hunt that he had better start looking for another job. During another lawful stop of Satchel's son on April 7, 1999, Satchel stated to Hunt, "I'll have your job today." Satchel, who is black, maintained that the incidents involving his son were racially motivated and constituted harassment. Satchel's son raised harassment as a defense during court proceedings on one of his traffic infractions and the court determined that the argument was meritless. (See Final Judgment dated November 4, 1998, Dkt. 1, at Ex. A.)

The last two incidents involving Hunt, Satchel, and Satchel's son occurred on December 10 and December 22, 1999. During the incident on December 22nd, Satchel approached two witnesses to the incident, advised them that he was the Mayor of Mulberry, questioned them as to what had occurred, and then claimed that "they" were having problems with Hunt and the Mulberry Police Department harassing his son. On January 4, 2000, at a Mulberry City Commission ("the Commission") meeting, Satchel once again complained that he and his son had

been the victims of harassment from the police for a period of fifteen years. Satchel requested an investigation by the Florida Department of Law Enforcement after he identified Hunt and complained that neither the City Manager Floyd Woods ("Woods") nor Police Chief John Hunter ("Hunter") would respond to his complaints. Satchel's wife requested the Commission to bring an end to the harassment and unprofessional attitudes of Hunter and Hunt.

On the night of January 9, 2000, Hunt was on duty in a high crime area around the Mulberry Housing Authority Complex when he attempted to investigate an abandoned, running automobile. At that time, an angry crowd, estimated at more than 100 people, appeared, threatening and verbally abusing Hunt and the other officers who were summoned as backup. At one point, Satchel and Smith arrived at the scene and joined the crowd. Hunt advised the crowd that he was conducting an investigation and requested the crowd to move back, but the crowd refused to move. Hunt was forced to retreat, but with the help of a cooperating citizen, he was able to complete his investigation.

On January 10, 2000, Woods ordered Hunter to relieve Hunt of all duties an place him on administrative leave until further notice. (See Memo, Dkt. 1, at Ex. C.) On January 11, 2000, a special Commission meeting was convened by Satchel. During the meeting, Satchel and Smith publicly berated the Mulberry Police Department, Woods, Hunter, and Hunt. Shortly thereafter, the Commission retained a private consulting firm to investigate complaints about Mulberry, the Mulberry Police Department, and Woods.

On January 18, 2000, Hunter advised Hunt that he was terminated for "offending orally, by gesture or by physical violence any member of the public while on

duty" in violation of the Mulberry Employee Handbook, Table of Infractions, Number 33. (*See* Memo, Dkt. 1, at Ex. D.) Satchel and Smith were allegedly offended when Hunt failed to seek their help during the January 9, 2000, investigation. Hunt then retained counsel and challenged his termination as being unlawful and pretextual, and requested a review. On January 20, 2000, Hunter advised Hunt that he was reinstated, but would remain on suspension with pay while an investigation was conducted. (*See* Memo, Dkt. 1, at Ex. E.)

On February 2, 2000, Woods advised Hunt that he was considering disciplinary action against him for unprofessional interactions with the public, Satchel, and Smith. (*See* Memo, Dkt. 1, at Ex. F.) On February 4, 2000, Hunt, Hunt's attorney, Woods, and Mulberry's counsel convened for an informal meeting. At that time, Woods advised that the investigation of Hunt would not proceed any further and stated that Hunt had been a good police officer. Then, on February 8, 2000, Woods once again advised Hunt that he was terminated for violating policies in the Mulberry Employee Handbook, Table of Infractions. (*See* Memo, Dkt. 1, at Ex. G.) On February 10, 2000, Hunt's counsel responded to Woods and demanded an appeal of Hunt's termination. (*See* Letter, Dkt. 1, at Ex. H.)

On June 5, 2000, a three-member panel of the Commission convened to review the decision to terminate Hunt. Satchel declined to attend the proceedings. No testimony or evidence based on personal knowledge was introduced in support of Hunt's termination. Ultimately, the panel voted 2 to 1 to uphold the termination decision. (*See* Findings of Fact and Conclusions of Law, Dkt. 1, at Ex. J.) Hunt maintains that "from the time of the January 4, 2000, Commission meeting, no one from Mulberry ever interviewed Hunt; informed Hunt of the rank, name, and command of the officer in charge of any purported investigation; informed Hunt of the nature of the investigation and the name of any complainants; convened a Complaint Review Board; notified Hunt of the proposed disciplinary action or the reason or reasons therefore prior to the effective date of such action; initiated an investigation, pursuant to an operating system such as an internal affairs division, regarding any purported complaints as to Hunt; effectively kept confidential any purported complaint and all information obtained with regard thereto until notice to Hunt of the conclusion and findings of such an investigation; or made available to Hunt any such complaint or any written statements made by any purported complainants and witnesses." (*See* Dkt. 1 at ¶ 33.)

### *Legal Standards*

In determining whether to grant a Fed. R.Civ.P. 12(b)(6) motion, the Court shall not dismiss the claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). The Court takes the well-pled facts of the complaint as true and construes the facts favorably to the plaintiff. *See* 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1368 (1990). The test is whether the facts state a legal claim. *See id.* If the defendant can show beyond a doubt that no set of facts could support the plaintiff's claim, the complaint will be dismissed. *See id.*

In any § 1983 action, the initial inquiry must focus on whether the two essential elements to a § 1983 action are present:

 1. whether the conduct complained of was committed by a person acting under color of state law; and

 2. whether this conduct deprived a person of rights, privileges, or immunities

**1292**

secured by the Constitution or laws of the United States.

*Parratt v. Taylor,* 451 U.S. 527, 535, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), overruled on other grounds by *Daniels v. Williams,* 474 U.S. 327, 330–31, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986); *Tillman v. Coley,* 886 F.2d 317, 319 (11th Cir.), *reh'g denied en banc,* 893 F.2d 346 (11th Cir. 1989); *Barfield v. Brierton,* 883 F.2d 923, 934 (11th Cir.1989); *Cornelius v. Town of Highland Lake, Alabama,* 880 F.2d 348, 352 (11th Cir.), *reh'g denied en banc,* 887 F.2d 1093 (11th Cir.1989), *cert. denied, Spears v. Cornelius,* 494 U.S. 1066, 110 S.Ct. 1784, 108 L.Ed.2d 785 (1990). In addition to identifying the constitutional right at issue, a Section 1983 complaint must be well-pled. "In civil rights ... actions, courts have recognized that more than mere conclusory notice pleading is required ... a complaint will be dismissed as insufficient where the allegations it contains are vague and conclusory." *Fullman v. Graddick,* 739 F.2d 553, 557 (11th Cir. 1984) (citations omitted).

### *Discussion*

#### *Count I: Denial of Procedural Due Process*

In Count I, Hunt brings a claim against all Defendants, pursuant to 42 U.S.C. § 1983, for denial of his Fourteenth Amendment procedural due process rights. Hunt argues that "Mulberry, Satchel, and Smith violated Hunt's rights by failing to follow appropriate procedures when terminating him, including but not limited to, the procedures set forth in the Police Officers' Bill of Rights, Section 112.532, et seq., Florida Statutes, and Mulberry's own Employee Handbook." (*See* Complaint, Dkt. 1, at ¶ 36.) Hunt maintains that there are no means available to remedy the deprivation of his due process rights.

In *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d

494 (1985), the Supreme Court decided that the process due an employee with a protected property interest in his employment is notice and an opportunity to be heard before termination. 470 U.S. at 542, 105 S.Ct. 1487. The Court explained that:

the pretermination "hearing," though necessary, need not be elaborate.

. . . .

[T]he pretermination hearing need not definitively resolve the propriety of the discharge. It should be an initial check against mistaken decisions—essentially, a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action.

The essential requirements of due process ... are notice and opportunity to respond.... [t]he ... employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story. To require more than this prior to termination would intrude to an unwarranted extent on the government's interest in quickly removing an unsatisfactory employee.

*Id.* at 545–46, 105 S.Ct. 1487 (citations omitted).

██ Although Hunt alleges that Satchel and Smith complained about his conduct and may have called for an investigation of him, Hunt fails to allege that Satchel or Smith had any role in his termination. Nevertheless, Hunt's allegations do reveal that on February 2, 2000, Mulberry, through then City Manager Floyd Woods, gave Hunt written notice of possible disciplinary action. (*See* Dkt. 1 at ¶ 25 & Ex. F.) Specifically, Woods notified Hunt of the charges and evidence against him and scheduled a meeting two days later for Hunt to present any information he believed to be relevant to the issue. (*See id.*

at Ex. F.) Hunt attended that meeting with his attorney and responded to the charges against him. (*See id.* at ¶ 26 & Ex. G.) Then, on February 8, 2000, Woods advised Hunt, in writing, that he had been terminated for the reasons stated in the pretermination letter. (See id. at ¶ 27 & Ex. G.) Hunt's allegations also reveal that he was afforded post-termination notice and an opportunity to present evidence at an appeal hearing before the three member Commission panel, which ultimately voted to uphold the termination. In light of the foregoing, the Court finds that Hunt's procedural due process rights were not violated because pre-termination and post-termination procedures consistent with *Loudermill* were afforded to him by Defendants.

■ Further, Hunt failed to seek state court judicial review of his termination and he does not sufficiently explain his failure to do so. (See Dkt. 1 at ¶ 31.) In *McKinney v. Pate*, 20 F.3d 1550 (11th Cir.1994), the Eleventh Circuit Court of Appeals held:

> [E]ven if McKinney suffered a procedural deprivation at the hands of a biased Board at his termination hearing, he has not suffered a violation of his procedural due process rights unless and until the State of Florida refuses to make available a means to remedy the deprivation. As any bias on the part of the Board was not sanctioned by the state and was the product of the intentional acts of the commissioners ... only the state's refusal to provide a means to correct any error resulting from the bias would engender a procedural due process violation.
>
> ....
>
> The Florida courts possess the power to remedy McKinney's loss both in terms of damages and equitable relief; as such, the Florida procedures satisfy procedural due process and alleviate any

deprivation McKinney may have suffered at the hands of the Board.

*See* 20 F.3d at 1563–64. As Defendants correctly point out, even if the Police Officers' Bill of Rights or the Mulberry's Employee Handbook created a protected property interest in Hunt's employment and Mulberry did not follow the requisite state or municipal procedures, Hunt's claim under Section 1983 still must fail. Hunt's procedural due process rights were not violated because pre-termination and post-termination procedures consistent with *Loudermill* and *McKinney* were available. In *McKinney*, the court held that "the fact that McKinney failed to avail himself of the full procedures provided by state law, does not constitute a sign of their inadequacy." *See id.* at 1565 (quoting *Kremer v. Chemical Constr. Corp.*, 456 U.S. 461, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982). Accordingly, Count I of the Complaint will be dismissed with prejudice for failure to state a claim upon which relief can be granted under Section 1983.

### *Count II: Denial of Substantive Due Process*

■ In Count II, Hunt brings a claim against all Defendants, pursuant to 42 U.S.C. § 1983, for denial of his Fourteenth Amendment substantive due process rights. Hunt argues that he was deprived of a protected interest when he was arbitrarily and capriciously terminated from employment. In *McKinney*, the Eleventh Circuit overruled its prior decisions that held a public employee's rights to substantive due process were violated when a public employer deprives that employee of a property interest for improper motives, and "by means that [are] pretextual, arbitrary, and capricious," regardless of whether a hearing is held. 20 F.3d at 1559–60. The court concluded that its prior reasoning could not be reconciled with

Supreme Court precedent on the issue. Specifically, the court held:

Today, however, we hold that, in non-legislative cases, only procedural due process claims are available to pretextually terminated employees. Thus, we conclude that our prior decisions, which granted pretextually terminated employees section 1983 causes of action premised on substantive due process violations, are contrary to Supreme Court jurisprudence; to the extent they are contrary to the holding of this opinion, they are overruled.

See id. at 1560. See also Hinson v. Clinch County, Georgia Bd. of Educ., 231 F.3d 821, 832 (11th Cir.2000) (citing McKinney and again noting that there is no viable Section 1983 substantive due process claim for mere arbitrary deprivation of state law employment rights.) The Eleventh Circuit ultimately found that because employment rights are state-created right and are not fundamental right created by the Constitution, they do not enjoy substantive due process protection. See McKinney, 20 F.3d at 1560. Accordingly, Count II of the Complaint will be dismissed with prejudice for failure to state a claim upon which relief can be granted under Section 1983.

### Counts III through VI: Supplemental State Law Claims

 Because the Court has dismissed Plaintiff's Section 1983 due process claims (Counts I and II), only Plaintiff's state law claims for violation (Counts III through VI) remain in this action. Title 28, Section 1367 of the United States Code provides that the district courts may decline to exercise supplemental jurisdiction over state claims where it has dismissed all the underlying federal claims. See 28 U.S.C. § 1367(c)(3). In making this determination, the court should consider factors such as "comity, judicial economy, convenience, fairness, and the like." See Crosby v. Paulk, 187 F.3d 1339, 1352 (11th Cir.1999)

(quoting Roche v. John Hancock Mut. Life Ins. Co. 81 F.3d 249, 257 (1st Cir.1996)). Although this decision is discretionary, see Engelhardt v. Paul Revere Life Ins. Co., 139 F.3d 1346, 1350 (11th Cir.1998), the dismissal of state law claims is strongly encouraged where the federal claims are dismissed prior to trial. See Baggett v. First Nat'l Bank, 117 F.3d 1342, 1353 (11th Cir.1997). Where the court declines to exercise supplemental jurisdiction over such claims, the claims should be dismissed without prejudice so they can be refiled in the appropriate state court. See Crosby, 187 F.3d at 1352. In the interest of judicial economy and convenience, the Court declines to exercise supplemental jurisdiction over the remaining state law claims (Counts III through VI) in this action.

Accordingly it is ordered:

1. That Defendants Frank R. Satchel, Jr. ("Satchel") and Johnnie B. Smith's ("Smith") Motion to Dismiss (Dkt.9) and Defendant City of Mulberry's ("Mulberry") Motion to Dismiss (Dkt.10) are granted. This case is dismissed with prejudice as to Counts I & II of the Complaint.

2. This case is dismissed without prejudice as to Count III through VI of the Complaint. Plaintiff may refile these state law claims in state court.

3. The Clerk shall terminate all pending motions and close this case.